OPINION OF THE COURT
David B. Saxe, J.
This is an action brought by St. Vincent’s Hospital and Medical Center of New York, seeking declaratory and injunctive relief, damages and costs and attorneys’ fees from the defendant Insurance Company of North America (INA) from whom St. Vincent’s obtained its excess medical malpractice insurance.
The issue raised on this motion and cross motion for summary judgment is whether INA is liable for coverage under the relevant excess insurance policy to St. Vincent’s for the settlement of malpractice cases where the settlement amount did not exceed the $200,000 coverage on the primary policies and the primary insurers which St. Vincent’s procured are either insolvent or unidentifiable. I hold that INA’s contention is the correct one. Thus, INA’s excess policy does not cover nor substitute for the absence of primary insurers in this case.
The essential facts are as follows: Effective October 15 in each of the years 1952, 1953, 1954 and 1955 the plaintiff procured primary insurance policies (the primary policies) with respect to medical malpractice risks in the London insurance market. The coverage was in the amount of $200,000 per person and $500,000 in the aggregate.
Plaintiff purchased, effective February 1, 1953, February 1, 1954, October 15, 1954 and October 15, 1955, from defendant excess insurance policies (the INA excess poli *666 cies), medical malpractice coverage in the amount of $300,000 excess of $200,000 per person and $500,000 excess of $500,000 in the aggregate. St. Vincent’s paid the necessary premiums for both the primary policies and the IN A excess policies.
Throughout the 1950’s and 1960’s a number of claims were asserted against plaintiff alleging that medical malpractice occurred at St. Vincent’s during the 1950’s. The primary insurers employed and paid attorneys to defend St. Vincent’s and settled, paid or otherwise disposed of many such claims without material dispute.
Since the mid-1970’s St. Vincent’s has been named in various lawsuits brought by or on behalf of persons claiming that at or around the time of their birth in the 1950’s they suffered injuries when, as premature babies, they were treated with oxygen to sustain life and prevent brain damage (RLF cases). These plaintiffs contend that they suffered from RLF which allegedly resulted in diminished or extinguished vision.
St. Vincent’s transmitted the complaints in these RLF cases to the primary insurers for defense or settlement. During the course of the defense of the relevant cases, the primary insurers revealed that they could not locate all of the coverage with respect to the policies and that certain of the primary insurers were insolvent.
An RLF case was brought by and on behalf of a plaintiff named Hanvey who alleged that medical malpractice occurred while Hanvey was hospitalized at St. Vincent’s in the period February 15, 1954 to March 28, 1954. The primary insurers defended the action which was settled in July, 1981. Prior to the settlement of the Hanvey action, St. Vincent’s made requests that IN A contribute to the settlement of the Hanvey case in respect to its obligation to satisfy any judgment in excess of the identified solvent coverage on the primary policy. IN A denied it had any obligation under the relevant excess insurance policy claiming that it was not responsible unless and until all $200,000 of coverage on the primary policies was located and exhausted.
There are other cases still pending which allege malpractice on the part of St. Vincent’s during the relevant *667 time periods. Each of these actions seeks damages in excess of the $200,000 per person coverage originally purchased on the primary policies.
The position taken by the defendant is that as an excess insurer it has no legal duty to pay any part of its insured’s losses falling within the applicable limits of the insured’s primary policy of insurance. INA’s contention is valid based on two grounds.
One must examine the terms of the contract in order to determine the application of the INA excess insurance policy. The court in Breed v Insurance Co. of North Amer. (46 NY2d 351, 355), held that the terms of such contracts may not be varied or rewritten, even to fulfill “notions of abstract justice”, but must be given effect according to their plain and ordinary meaning.
The relevant language of INA Policy No. XPL 3798 is as follows: “This certificate is to further indemnify the insured in accordance with the applicable insuring agreements of the Primary Insurance against excess loss as is indicated in Column II (Excess Ins.) above, as fully and to all intents and purposes as though the Primary Insurance, including any renewals thereof or any endorsement issued to form a part thereof, had been issued for the limits set forth in Column III above, and as though the Company had assumed and insured the upper limits of the Primary Insurance, to wit: the excess of the amounts specified in Column II over the amounts specified in Column I. (Primary Insurance).” The “plain and ordinary meaning” in this contract dictates that the duty of INA only entails providing insurance in excess of the amounts specified in the primary insurance policies.
“When one coverage is declared to be excess and the • other is not, the excess coverage is applicable only to loss in an amount exceeding the limit of the other coverage and not to the loss up to that limit” (Keeton, Basic Insurance Law [1971 ed], p 172). Unless the wording of the contract dictates otherwise, the courts generally do not find excess insurers liable in situations analogous to the one here.
Is the primary insurance exhausted in the present case? I do not believe so. In Molina v United States Fire Ins. Co. (574 F2d 1176 [CA 4th, 1978]), a physician procured mal *668 practice insurance from a primary insurer for up to $100,000 and excess insurance issued by another carrier in reliance thereon. The primary insurer became insolvent and soon thereafter two medical malpractice claims were filed against the doctor. The excess carrier refused to defend and this refusal was upheld by the Fourth Circuit, which declared that if the physician’s ultimate loss did not exceed $100,000 he had no right to indemnification from his excess insurer and would have to pay the loss on his own. The same situation is present here. (See, also, Mountain States Mut. Cas. Co. v American Cas. Co., 135 Mont 475.) Insolvency and or unidentifiability do not create liability on the part of the excess insurer because these occurrences are not in “excess of the amounts specified” in the primary policy as the contract demands in order for the excess insurance to be used.
Accordingly, the plaintiff’s motion for summary judg^ ment and injunctive relief is denied. The defendant’s cross motion for summary judgment is granted to the extent stated herein.