DONALD B. MacNEAL, INC., Plaintiff-Appellant, v. INTERSTATE FIRE AND CASUALTY COMPANY, Defendant-Appellee.

First District (3rd Division)   No. 84—723

Opinion filed April 10, 1985.

Jacobs, Williams & Montgomery, Ltd., of Chicago (Barry L. Kroll and Lloyd E. Williams, Jr., of counsel), for appellant.

Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:
Plaintiff, Donald B. MacNeal, Inc., brought this action for declara-

tory judgment against its excess insurer, defendant Interstate Fire and Casualty Company. Plaintiff sought recovery under an umbrella insurance policy for $100,000, which it paid to settle a claim when the underlying primary insurer became insolvent. The trial court entered judgment on the pleadings in favor of defendant, and plaintiff appeals.

Plaintiff purchased primary and excess liability insurance for the operation of its recreational facility known as Holiday Park. The primary liability insurance policy was issued by All-Star Insurance Corporation. The initial policy provided bodily injury liability coverage of $100,000 per person, effective December 1, 1972, to April 1, 1974. A successor policy, effective April 1, 1974, to April 1, 1975, provided coverage of $300,000 per person. The excess insurance policy issued by defendant provided umbrella bodily injury liability coverage of $1,000,000 for any one occurrence, effective June 14, 1973, to June 14, 1976. Defendant's liability applied "in excess of (1) the amount recoverable under underlying insurance as set out in Item 4." Item 4 described the "Underlying insurance" for Holiday Park as "Comprehensive General Liability" issued by All-Star and stated the limits of insurance as "$100/300/50,000." Alternatively, defendant's liability was "in excess of *** (2) $10,000.00 ultimate net loss in respect of each occurrence not covered by said underlying insurance."

A business invitee sustained a serious injury at Holiday Park on July 4, 1974, and filed an action against plaintiff in 1975 requesting $1,000,000 in damages. On March 1, 1977, All-Star was ordered into liquidation because of insolvency. While the personal injury action was pending, plaintiff filed the present complaint for declaratory judgment against defendant, pursuant to section 2—701 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—701). Plaintiff sought a declaration of rights and obligations of the parties arising out of defendant's excess insurance policy involving All-Star's insolvency. Thereafter, the personal injury suit against plaintiff was settled for $1,000,000; plaintiff paid $100,000 and defendant paid $900,000. Plaintiff and defendant agreed that the payments would not prejudice the rights of either to a determination of their ultimate respective rights and obligations under the excess insurance contract.

Thereafter, plaintiff filed an amended complaint seeking reimbursement for the defense and compromise of the claim in excess of $10,000 ($139,135.84) or in excess of $100,000 ($49,135.84). Defendant's answer stated that its coverage was in excess of $300,000 ultimate loss. Plaintiff sought judgment on the pleadings, maintaining that defendant was obligated to pay the entire $1,000,000 coverage

under its excess policy because the "amount recoverable" from the insolvent underlying insurer was zero. Plaintiff requested reimbursement for $100,000 which it had contributed to the $1,000,000 settlement. Defendant asserted that the "amount recoverable" from the underlying insurance was the face value of the primary policy.

Defendant filed a counterclaim for declaratory judgment seeking $200,000 reimbursement from plaintiff. Defendant also moved for judgment on the pleadings. The trial court, finding that defendant did not assume the obligations of the primary insurer for plaintiff, denied plaintiff's motion and granted defendant's motion for judgment on the pleadings. The issue raised by defendant's counterclaim was reserved by the trial court. After the trial court granted defendant's motion to dismiss its counterclaim with prejudice, plaintiff filed this appeal.

■ The issue on appeal is whether under the language of the insurance contract plaintiff (insured) or defendant (excess insurer) is obligated to bear the loss resulting from the insolvency of the primary insurer. Plaintiff maintains that the language of the insurance contract which provided coverage for amounts "in excess of the amount recoverable under underlying insurance" requires defendant to reimburse plaintiff for the $100,000 paid to settle the personal injury action. Plaintiff argues that this $100,000 was within the coverage of the underlying insurance which was not paid by the underlying primary insurer, All-Star. Since All-Star was ordered into liquidation, plaintiff claims that the "amount recoverable" was zero. Defendant contends that as an excess insurer, it does not bear the risk of a primary insurer's insolvency because it did not contract to assume that risk.

Since both parties have filed motions for judgment on the pleadings, it is generally conceded that no fact questions exist and that the issues presented to the court are solely questions of law. (*Zipf v. All-state Insurance Co.* (1977), 54 Ill. App. 3d 103, 369 N.E.2d 252.) Moreover, construction of an insurance policy presents only a question of law (*State Farm Mutual Automobile Insurance Co. v. Schmitt* (1981), 94 Ill. App. 3d 1062, 419 N.E.2d 601), and this issue is, therefore, appropriate for determination by means of judgment on the pleadings. See *Kravis v. Smith-Marine, Inc.* (1974), 20 Ill. App. 3d 470, 314 N.E.2d 577.

Under established rules of construction, if a provision of an insurance contract is ambiguous, it will be construed in favor of the insured and against the insurer who drafted the instrument (*Dora Township v. Indiana Insurance Co.* (1980), 78 Ill. 2d 376, 400 N.E.2d 921) and seeks to limit its liability. (*State Farm Mutual Automobile*

*Insurance Co. v. Schmitt* (1981), 94 Ill. App. 3d 1062, 419 N.E.2d 601.) A provision in an insurance contract is considered to be ambiguous if it is subject to more than one reasonable interpretation. (*Reserve Insurance Co. v. General Insurance Co. of America* (1979), 77 Ill. App. 3d 272, 395 N.E.2d 933.) The provision at issue is as follows:

> "Item 3. Limit of Liability: The limit of the company's liability shall be ***.
>
> > (a) $1,000,000 single limit any one occurrence ***.
> > * * *
>
> in excess of
>
> > (1) The amount recoverable underlying insurance as set out in Item 4
> >
> > > or
> >
> > (2) $10,000 ultimate loss in respect of each occurrence not covered by said underlying insurance."

Item 4 listed the underlying insurance for Holiday Park as the Comprehensive General Liability policy issued by All-Star.

Similar language in an excess-insurance contract was considered by the Supreme Court of California in *Reserve Insurance Co. v. Pisciotta* (1982), 30 Cal. 3d 800, 812, 640 P.2d 764, 770, 180 Cal. Rptr. 628, 634. In that case the relevant condition stated:

> "The Company [CNA] (excess insurer) shall only be liable for the ultimate net loss in excess of ***:
>
> > (1) the amount recoverable under the underlying insurance as set out in the schedule of the underlying insurance ***."

The court considered whether the wording of the excess policy required the excess insurer to provide coverage that the primary insurer would have assumed had it not become insolvent. The court reasoned:

> "CNA assumed liability for any excess over the 'amount recoverable' under the underlying policy. That language might possibly be interpreted either to expose CNA only for amounts over the dollar limits of the underlying insurance or to expose CNA for amounts which the insured is not able to actually recover from the underlying insurer because of its insolvency. Because there are two meanings which may reasonably be attributed to the term in question, it is ambiguous and under settled principles must be construed in favor of the insured." (30 Cal. 3d 800, 814-15, 640 P.2d 764, 772, 180 Cal. Rptr. 628, 632.)

The court concluded that the excess insurer's policy included the risk of the primary insurer's insolvency within the scope of its coverage.

■ We adopt the reasoning of *Pisciotta* and conclude that defend-

ant's term limiting liability in excess of the amount recoverable under underlying insurance was subject to two interpretations and is, therefore, ambiguous. Construing the ambiguous phrase "amount recoverable" most strongly against the insurer and in favor of the insured, we hold that the language of the excess insurance contract requires defendant to assume the risk of the primary insurer's insolvency. See *State Farm Mutual Automobile Insurance Co. v. Schmitt* (1981), 94 Ill. App. 3d 1062, 419 N.E.2d 601.

The policy language in the present case and in *Pisciotta* is different from that contained in *Molina v. United States Fire Insurance Co.* (4th Cir. 1978), 574 F.2d 1176, and *St. Vincent's Hospital & Medical Center v. Insurance Co. of America* (1982), 117 Misc. 2d 665, 457 N.Y.S.2d 670. Those cases held that insolvency of the primary insurer did not require the excess insurer to assume the primary's obligation. In *Molina,* however, the excess policy indemnified the insured for "the ultimate net loss in excess of the retained limit," where "retained limit" was defined as "the total of the applicable limits of the underlying policies ***." (574 F.2d 1176, 1178.) In *St. Vincent's,* the excess insurer was obligated to indemnify the insured for the "excess of the amounts specified" in the primary insurance policies. (457 N.Y.S.2d 670, 672.) Clearly, the language in *Molina* and *St. Vincent's* reveals that the insurance provided that the excess insurer would pay for losses in excess of a fixed amount, the primary policy limits. In contrast, the term "amount recoverable" can be interpreted as a variable amount which depends on the actual amount recoverable from the primary insurer, not the fixed policy limits.

■ Defendant argues that the maintenance clause requires plaintiff to assume the responsibility for the underlying primary insurance. The maintenance clause provides that failure of the insured to maintain primary insurance will not invalidate the policy, "but in the event of such failure the company shall only be liable to the same extent as they would have been had the insured complied with said condition." It is obvious that plaintiff did maintain the underlying primary insurance during the applicable policy period. It was not until after the accident in 1974, the filing of the personal injury action in 1975, and the expiration of the policies in question on April 1, 1975, and June 14, 1976, that All-Star was ordered into liquidation on March 1, 1977. Questions of the applicable coverage provided by an insurance policy can be determined only as of the time of the incident creating potential liability. (*Hawkeye Security Insurance Co. v. Sanchez* (1984), 122 Ill. App. 3d 183, 460 N.E.2d 873.) Since plaintiff carried the primary insurance policy at the time of the accident giving rise to potential lia-

bility, plaintiff fulfilled its contractual obligation under the maintenance clause. Therefore, even if the maintenance clause did require plaintiff to assume responsibility for primary insurance, it did not shift the risk of the primary insurer's insolvency to plaintiff (insured) in this instance.

Defendant also maintains that excess insurance coverage is not operative absent primary insurance. Defendant's contention again overlooks the fact that plaintiff retained primary insurance at the time of the incident creating liability for both primary and excess insurance. Moreover, the cases offered by defendant to support this proposition concern the issue of whether excess insurance coverage should apply at all. (*Whitehead v. Fleet Towing Co.* (1982), 110 Ill. App. 3d 759, 442 N.E.2d 1362; *Farmers Automobile Insurance Association v. Iowa Mutual Insurance Co.* (1966), 77 Ill. App. 2d 172, 221 N.E.2d 795.) Here, defendant admits in its pleadings that the excess coverage should apply. The issue is whether defendant should assume the primary insurance coverage, and we have concluded that defendant's policy language requires it to do so.

■ Defendant finally claims that it did not assume the risk of the primary insurer's insolvency because the reduced premium for excess insurance reflects its intention to place that risk upon the insured. The intention of the parties to a contract is expressed in the words of the contract and an insurance policy must be construed as a whole. (*State Farm Mutual Automobile Insurance Co. v. Schmitt* (1981), 94 Ill. App. 3d 1062, 419 N.E.2d 601.) We have examined the language of the contract and have concluded that it requires defendant to assume the risk of primary insurer's insolvency. The fact that defendant offered its excess policy at a reduced rate does not change the interpretation of the entire contract. Defendant's language admitting its liability controls the amount of coverage it must pay to settle a suit, not the amount it charges its insured for excess insurance. Construing the policy as a whole to give effect to the intention of the parties requires defendant to pay the entire settlement.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for further proceedings consistent with the holdings of this opinion.

Reversed and remanded.

WHITE, P.J., and RIZZI, J., concur.