**GUARANTY NATIONAL INSURANCE COMPANY, Plaintiff**

v.

**BAYSIDE RESORT, INC., Defendant**

Civil No. 1985/183

District Court of the Virgin Islands

Div. of St. Croix

June 13, 1986

STACY L. WHITE, ESQ. (BRITAIN H. BRYANT & ASSOCIATES, P.C.), St. Croix, V.I., *for plaintiff*

RICHARD H. HUNTER, ESQ., JUDITH A. TURNER, ESQ. (ISHERWOOD, HUNTER & COLIANNI), St. Croix, V.I., *for defendant*

O'BRIEN, *Judge*

## MEMORANDUM OPINION AND ORDER

This dispute pits an innocent policyholder against its equally innocent insurer. We are asked to decide whether the defendant, yet another victim of the insolvent Dome Insurance Company, is entitled to primary coverage from its excess carrier. We hold it is not.

## I. FACTS

Defendant Bayside Resorts, Inc. owns the Sapphire Beach Resort on the south shore of St. Thomas. It carried $1 million of liability insurance covering injuries suffered by its patrons, consisting of a $500,000 primary general liability policy and an umbrella contract in the same amount. The former was issued by the now infamous Dome Insurance Co. and the latter by the plaintiff, Guaranty National Insurance Co.

Section V of Guaranty's policy provides that it would only indemnify Bayside for the ultimate net loss in excess of the:

(a) applicable limits of underlying insurance as stated in Item 5 of the Declarations [$500,000], and any other underlying insurance collectible by the insured, or

(b) the retained limit as stated in Item 4 of the Declarations [$10,000] if the occurrence is not covered by such underlying insurance subject to the limits of liability stated in item 3 of the Declarations for each occurrence.

It also provides that "[i]n the event of . . . exhaustion of the aggregate limits of liability under the underlying insurance by reason of losses paid thereunder, this policy shall . . . continue in force as underlying insurance."

On June 20, 1980, while both policies were in force, a female vacationer was brutally attacked in her Sapphire Beach quarters. She sued Bayside two years later in the St. Thomas-St. John Division of this Court, demanding compensatory damages of $500,000 for her physical injuries and emotional trauma and $100,000 in punitive damages.[1] This suit is grounded on the theory of inadequate security and is characterized alternatively as reckless, negligent, and a breach of contract and warranty.

Dome defended the action until the embezzlement of its assets at the hands of convicted swindler Leo Bloom was uncovered in February 1985. Guaranty then assumed the defense under a reservation of rights and initiated the present action for declaratory judgment, claiming that its umbrella policy does not afford Bayside coverage until its liability exceeds $500,000. Bayside has cross-moved for summary judgment on the issue of coverage and counterclaimed for compensatory and punitive damages on the theory that Guaranty breached its good faith duty by seeking declaratory relief. Guaranty has moved alternatively to dismiss the counterclaim or for a declaration of its culpability.

## II. DISCUSSION

■ An excess, or umbrella, policy insures the policyholder against liability that exceeds a stated amount and the language of the contract determines when the carrier's duty to indemnify arises. E.g., Rhodes, Couch on Insurance 2d, § 62:48 (1983). Bayside

---

[1] Tyo-Wegner v. Bayside Resort, Inc., et al., Civ. No. 82/147. A loss of consortium count was dismissed early in the suit because the plaintiff was not married at the time of the incident.

contends that two provisions of the Guaranty policy afford it coverage of the Tyo-Wegner lawsuit.

The first theory is that the incident was "not covered" by the primary policy because of Dome's insolvency. Thus, Guaranty must indemnify damages exceeding $10,000 under Section V(b). See text supra. Bayside bolsters its argument with several cases, none of which construe the language contained in its own contract.[2] Its best precedent is Reserve Insurance Co. v. Pisciotta, 640 P.2d 764 (Cal. 1982) (in bank), holding that a secondary insurer that assumes liability for damages exceeding the "amount recoverable" under the primary policy must totally indemnify its insured upon the insolvency of the underlying insurer. The California court found this clause to be ambiguous and construed it against the carrier. Id. at 772.

This rationale was adopted under identical facts in Donald B. MacNeal, Inc. v. Interstate Fire and Casualty Co., 477 N.E.2d 1322, 1325 (Ill. App. 1985). That policy also included a clause that is precisely the same as the one Bayside now claims coverage under but its applicability was not addressed. Instead MacNeal, like Pisciotta, hinged on a finding that the policy language was ambiguous.

We reject this approach without grappling with the semantics of the policy language because the Guaranty clause is susceptible of only one interpretation. The universal definition of "coverage" is the amount and extent of risk contractually assumed by the carrier. E.g., Traders State Bank v. Continental Insurance Co., 448 F.2d 280, 283 (10th Cir. 1971); Sebough v. Sisk, 413 S.W.2d 602, 606 (Mo. App. 1967); Black's Law Dictionary 330 (rev. 5th ed. 1979). Accord Insurance Company of North America v. Aufenkamp, 435 A.2d 774, 778-79 (Md. App. 1981).[3]

---

[2] Bayside asserts that its request for a $10,000 retained limit, which is contained in its application for the Guaranty policy, is indicium of the parties' intent that the lower limit would apply here. This application must be disregarded as inadmissible parol evidence because the final insurance contract is devoid of reference to it. E.g., Zugelter v. Bank of America, 728 F.2d 218, 220 (3d Cir. 1984).

[3] Bayside attempts to conjure up ambiguity by arguing that coverage means payment of the claim. "A court should not torture the language of the policy in order to create ambiguities which, in turn, could be construed in favor of the insured." Treasure Craft Jewelers v. Jefferson Insurance Co., 583 F.2d 650, 652 (3d Cir. 1981). This concept is better expressed in its exhaustion argument.

■■ It is, therefore, clear that Guaranty's liability is triggered · when Bayside suffers a loss arising from a risk not assumed by its primary insurance. Stated another way, its risk is defined by the limitations of coverage expressed in the Dome policy. The result, of course, is that Guaranty is liable for damages over $10,000 only if Dome excluded coverage of the Tyo-Wegner claim.[4] This, however, is not the case because Dome insured Bayside for bodily injuries suffered within the resort without reservation. Consequently, we hold that this clause is inapplicable to the Tyo-Wegner lawsuit. Thus, Guaranty's duty to indemnify is limited to damages exceeding $500,000.[5]

■■■ Alternatively, Bayside contends that Guaranty must fully indemnify the Tyo-Wegner damages because Dome's insolvency constitutes exhaustion of the primary coverage. See text supra. The plain language of the exhaustion clause expressly states, however, that exhaustion of the Dome policy could only occur "by reason of losses paid thereunder". This phrase makes clear that the parties intended exhaustion to mean payment, which obviously cannot occur here. Molina v. United States Fire Insurance Co., 574 F.2d 1176, 1178 (4th Cir. 1978); St. Vincent's Hospital & Medical Center v. Insurance Company of North America, 457 N.Y.S.2d 670, 672 (Sup. Ct. 1982). It also distinguishes the Guaranty policy from cases in which contracts without this language were construed against the excess carrier. McConnell v. Underwriters at Lloyds of London, 365 P.2d 418 (Cal. 1961) (in banc); Fageol Truck & Coach Co. v. Pacific Indemnity Co., 117 P.2d 669. We hold, therefore, that Guaranty must indemnify Bayside for Tyo-Wegner damages that exceed $500,000.

---

[4] E.g., Macalco, Inc. v. Gulf Insurance Co., 550 S.W.2d 883 (Mo. App. 1977). In Macalco, the excess insurer was ordered to indemnify where the policy provided coverage for damages over $10,000 if the underlying contract was "inapplicable to the occurrence". That policy was held inapplicable because the insured had breached an express condition of coverage.

[5] At oral argument Bayside also contended that coverage could be found under § 5(a) because that clause can be interpreted as requiring Guaranty to assume primary coverage if the Dome policy was uncollectible. This claim ignores the clause's punctuation—a comma signalling the drafter's intention to apply a different condition to the primary underlying policy. We hold that collectibility is required of underlying policies other than Dome's.

■■ Bayside's next claim is that Guaranty, by seeking declaratory relief, breached the duty of good faith that insurers owe to their policyholders. This charge is totally unfounded. Having voluntarily assumed the defense of its insured, Guaranty judiciously followed the procedure adopted by this Court for disputing coverage: it sought a declaratory judgment on the issue of coverage while defending under a reservation of rights. Cay Divers, Inc. v. Raven, 627 F. Supp. 453, 457 (D.V.I. 1986); Dominic v. Hess Oil Virgin Islands Corp., 1624 F. Supp. 117, 120 (D.V.I. 1985) [citing Maneikis v. St. Paul Insurance Co. of Illinois, 655 F.2d 818, 821 (7th Cir. 1981)].

We find, therefore, that Bayside's counterclaim fails to state a cause of action because the institution of declaratory judgment proceeding does not constitute bad faith.

The final matter we must address is Bayside's demand that Guaranty fully indemnify it, a demand contained in the first paragraph of Bayside's counterclaim. We read that demand to include indemnification, under the umbrella of the policy, for any award of punitive damages against Bayside made in the underlying action in favor of Tyo-Wegner.

We decline to decide whether a punitive damage award would be insurable because this issue is nonjusticiable at this time. Not only is it uncertain that exemplary damages will be awarded at the Tyo-Wegner trial, or are even appropriate, but it is equally unclear that Guaranty's liability limit will ever be exceeded. Under such circumstances this Court lacks subject matter jurisdiction. Accord Companion Assurance Co. v. Alliance Assurance Co., 585 F. Supp. 1382, 1385 (D.V.I. 1984).

## III. CONCLUSION

In summary, we hold that the coverage afforded Bayside under the Guaranty policy is limited to indemnification of damages in excess of $500,000. Therefore, we will dismiss with prejudice Bayside's counterclaim, seeking coverage on a more favorable basis to it.

With respect to the claim for coverage of exemplary damages under the policy which we read into the Bayside counterclaim, we will dismiss that portion of the counterclaim without prejudice, by reason of its nonjusticiability at this time.

## SUMMARY JUDGMENT

THIS MATTER is before the Court on the cross motions of the parties for summary judgment. The Court having filed its Memorandum Opinion of even date herewith, and the premises considered, now therefore it is

ORDERED, ADJUDGED AND DECREED:

THAT summary judgment is GRANTED in favor of the plaintiff, and further

THAT the plaintiff's duty to pay any judgment rendered in the underlying action does not arise until the exhaustion of the $500,000 limit originally defined in the primary insurance contract; and

THAT the counterclaim of the defendant is DISMISSED WITH PREJUDICE, except that portion of the counterclaim which asserts a right to coverage for exemplary damages if awarded in the underlying action, which portion is DISMISSED WITHOUT PREJUDICE.