VALUE CITY, INC. ET AL., APPELLANTS, *v.* INTEGRITY INSURANCE COMPANY, APPELLEE.

(No. 86AP-280—Decided December 11, 1986.)

*Lane, Alton & Horst, Jack R. Alton* and *Richard O. Wuerth,* for appellants.

*Thompson, Hine & Flory, Edward F. Whipps, Robert D. Monnin* and *Jeffrey A. Key,* for appellee.

MOYER, P.J. This matter is before us on the appeal of plaintiffs-appellants, Value City, Inc. et al., from summary judgment in favor of defendant-appellee, Integrity Insurance Company.

Value City and other affiliated corporations (hereafter "Value City") commenced this action in the Franklin County Court of Common Pleas seeking: declaratory judgment regarding Integrity's duty to defend and indemnify Value City under policies of insurance; injunctive relief ordering the defense and payment of claims by Integrity; compen-

satory damages in the amount of $250,000; and punitive damages in the amount of $250,000. The trial court overruled Value City's motion for partial summary judgment on its claim for declaratory judgment, and sustained Integrity's motion for summary judgment on the complaint.

Integrity issued two consecutive one-year commercial catastrophe liability policies to Value City covering the policy periods August 1, 1981 to August 1, 1982 and August 1, 1982 through August 1, 1983, respectively. These policies are essentially identical and provide excess umbrella coverage up to $5 million, subject to underlying insurance covering bodily injury, property damage, and advertising liability in the amount of $500,000.

· Value City obtained underlying insurance having limits of $500,000 from Ambassador Insurance Company covering general liability for bodily injury and property damage, and advertising liability. Two consecutive one-year Ambassador policies covered the periods August 1, 1981 to August 1, 1982 and August 1, 1982 through August 1, 1983, respectively.

Ambassador, a Vermont corporation, was declared insolvent November 10, 1983 by the Washington County Superior Court of the state of Vermont and ordered into liquidation on September 15, 1984. Thereafter, Ambassador allegedly failed to defend and pay claims for damages against Value City as Value City's primary insurance carrier.

Due to Ambassador's insolvency, Value City sought to have Integrity assume primary liability for the defense and payment of claims pending for the policy years August 1, 1981 through August 1, 1983. Integrity has refused Value City's demands.

Pursuant to Integrity's motion for summary judgment, the trial court found:

"* * * As the only 'facts' involved are established by the agreed upon language of the applicable insurance policies, the Court finds that there are no genuine issues of material fact.

"Turning then to the construction of the language of the policies at issue here, the Court must construe the language to determine which party is entitled to judgment as a matter of law. Everyone acknowledges that there are no Ohio cases on point and discusses foreign law extensively. Upon review of the policy language, the arguments of counsel and the cases cited, the Court concludes that the Integrity Insurance policies are 'excess' insurance policies in the sense that there is no obligation to provide coverage below the $500,000 limit. Plaintiff dealt with the liquidating insurance company and should bear the risk of loss of its primary coverage."

Value City appeals from that judgment asserting two assignments of error:

"1. The trial court committed error in granting the defendant-appellee's motion for summary judgment.

"2. The trial court committed error by overruling the plaintiff-appellant's motion for summary judgment."

The assignments of error will be considered together.

Summary judgment may be granted pursuant to Civ. R. 56(C), which provides, in part:

"* * * Summary judgment shall be rendered forthwith if * * * there is no genuine issue as to any material fact and * * * the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. * * *"

Because both parties have submit-

ted identical copies of the Integrity insurance policies at issue, and further accept the fact of the insolvency and liquidation of Ambassador Insurance Company, the material facts are uncontested. The interpretation and construction of insurance documents is a matter of law to be determined by the court using rules of construction and interpretation applicable to contracts generally. *Gomolka* v. *State Auto. Mut. Ins. Co.* (1982), 70 Ohio St. 2d 166, 167, 24 O.O. 3d 274, 275, 436 N.E. 2d 1347, 1348; *Wagner* v. *Natl. Fire Ins. Co.* (1937), 132 Ohio St. 405, 412, 8 O.O. 216, 218-219, 8 N.E. 2d 144, 147. We agree, therefore, with the trial court's conclusion that there are no genuine issues of material fact.

The trial court proceeded to review the insurance policies at issue and rendered judgment in favor of Integrity as a matter of law:

"* * * [T]he Integrity Insurance policies are 'excess' insurance policies in the sense that there is no obligation to provide coverage below the $500,000 limit * * *."

The ultimate issue presented upon appeal, which is one of first impression in Ohio, is whether the language of the excess insurance contract encompasses the risk of insolvency of the primary carrier.

Other jurisdictions considering the question have reached different conclusions based upon the language of the excess insurance contracts at issue. Excess insurers were not held liable as primary insurers for claims against their insureds under contracts scrutinized in the leading case of *Molina* v. *United States Fire Ins. Co.* (C.A. 4, 1978), 574 F. 2d 1176; *Mission Natl. Ins. Co.* v. *Duke Transp. Co.* (C.A. 5, 1986), 792 F. 2d 550; *Continental Marble & Granite* v. *Canal Ins. Co.* (C.A. 5, 1986), 785 F. 2d 1258; *Guaranty Natl. Ins. Co.* v. *Bayside Resort, Inc.* (D.C. Virgin Islands 1986), 635 F. Supp. 1456; *Golden Isles Hospital, Inc.* v. *Continental Cas.*

*Co.* (Fla. App. 1976), 327 So. 2d 789; and *St. Vincent's Hospital & Medical Ctr.* v. *Ins. Co. of North America* (1982), 117 Misc. 2d 665, 457 N.Y. Supp. 2d 670. To the contrary, obligations of the insolvent primary insurer were imposed upon excess insurers in the leading California case of *Reserve Ins. Co.* v. *Pisciotta* (1982), 30 Cal. 3d 800, 180 Cal. Rptr. 628, 640 P. 2d 764; *Fageol Truck & Coach Co.* v. *Pacific Indemn. Co.* (1941), 18 Cal. 2d 748, 117 P. 2d 669; *McConnell* v. *Underwriters at Lloyds of London* (1961), 56 Cal. 2d 637, 16 Cal. Rptr. 362, 365 P. 2d 418; *Donald B. MacNeal, Inc.* v. *Interstate Fire & Cas. Co.* (1985), 132 Ill. App. 3d 564, 477 N.E. 2d 1322; and *Gros* v. *Houston Fire & Cas. Ins. Co.* (La. App. 1967), 195 So. 2d 674; cf. *Macalco, Inc.* v. *Gulf Ins. Co.* (Mo. App. 1977), 550 S.W. 2d 883 (although not involving insolvency, breach of "pilot clause" by insured rendered primary coverage "suspended" and therefore "inapplicable," resulting in liability under the terms of the policy of excess insurance).

For the reasons that follow, we find that reasonable minds can only conclude that the excess insurance contract at issue does not require Integrity to assume the primary risk of loss upon the insolvency of the primary insurance carrier.

The "Insuring Agreements" provisions setting forth the extent of coverage under the Integrity policy state:

"1. COVERAGE

"In consideration of the payment of the required premium, the Company hereby agrees, subject to all of the terms of this policy, to pay on behalf of the Insured all sums, as more fully defined by the term ultimate net loss, for which the Insured shall become obligated to pay by reason of liability

"(a) imposed upon the Insured by law or

"(b) assumed under contract or agreement by the Insured, arising out of

personal injury, property damage or advertising liability caused by an occurrence.

"2. UNDERLYING LIMIT — RETAINED LIMIT

"The Company shall be liable only for the ultimate net loss the [sic] excess of the greater of the Insured's underlying limit or retained limit defined as:

"(a) Underlying limit — an amount equal to the limits of liability indicated beside the underlying insurance listed in the schedule of underlying insurance [$500,000] plus the applicable limits of any other underlying insurance collectible by the Insured;

"(b) Retained limit — The amount specified in item 3(c) of the declarations [$0 for the 1981-1982 period, $10,000 for the 1982-1983 period] as the result of an occurrence not covered by said underlying insurance, and which shall be borne by the Insured separately as respects [sic] to each occurrence during the period of this policy.

"3. LIMITS OF LIABILITY
"* * *

"In the event that the aggregate limits of liability of the underlying policies, listed in the schedule of underlying insurance, are exhausted or reduced, solely as the result of occurrences taking place after the inception date of this policy, this policy shall, subject to the Company's limit of liability and to the other terms of this policy, with respect to occurrences which take place during the period of this policy, continue in force as underlying insurance for the remainder of the policy year of the underlying policy or until the Company's aggregate limit of liability (stated in Item 3(b)) is exhausted, but not for broader coverage than was provided by the exhausted underlying insurance."

Value City first argues that Integrity is obligated to pay losses on bodily injury and property damage claims under the "underlying limit," paragraph 2(a), because Value City's "collectible" underlying insurance has been exhausted due to Ambassador's insolvency.

Value City's contention is not well-taken.

A linguistic analysis reveals that the "underlying limit" is defined in paragraph 2(a) by two separate conditions, and is expressed in the conjunctive. Thus, even if no other underlying insurance is "collectible," the plain meaning of the first condition fixes the underlying limit at an amount certain, in this case, $500,000. This fixed limit establishes a minimum threshold above which individual or aggregate ultimate net loss due to awards and settlements must rise to trigger Integrity's liability under policy paragraph 2(a).

Furthermore, these underlying limits of liability may be exhausted "* * * solely as the result of occurrences taking place after the inception date of this policy," as set forth in paragraph three of the insuring agreements. An "occurrence" is defined in the policy glossary as:

"* * *an accident, including continuous or repeated exposure to conditions, which results in personal injury, property damage or advertising liability neither expected nor intended from the standpoint of the insured."

Ambassador's insolvency is not an "accident" resulting in the type of injury, damage, or liability defined as an "occurrence," and, therefore, does not serve to exhaust or reduce the aggregate limits of liability of the underlying policy and trigger Integrity's liability under paragraph 2(a) of the insuring agreements.[1]

In addition, Value City's contention

---

[1] This conclusion is consistent with Molina v. United States Fire Ins. Co., supra, at 1178; Mission Natl. Ins. Co. v. Duke Transp. Co., supra, at 553; Guaranty Natl. Ins. Co. v. Bayside Resort, Inc., supra, at 1458; and St. Vincent's Hospital & Medical

presumes the claims against it would be covered by the underlying insurance if it was collectible. Value City stated in its reply to Integrity's motion for summary judgment that approximately $365,891 and $296,921 have been paid toward settlement of claims for the 1981-1982 and 1982-1983 periods, respectively. This evidence reveals that the aggregate of those losses, if accepted in their entirety, does not rise to the level of the underlying limit of $500,000.

Alternatively, Value City contends that Integrity is obligated to pay claimed losses under the "retained limit" provision, paragraph 2(b), because the claims for bodily injury and property damage are occurrences "* * * not covered by said underlying insurance."

The provisions of paragraph 2(b) of the insuring agreements also do not apply to make Integrity primarily liable for claims against Value City. We agree with the argument made by Integrity that, because Ambassador's insolvency is not an "occurrence," it also cannot be categorized as an "occurrence not covered by said underlying insurance."

Moreover, but for Ambassador's insolvency, losses on occurrences during the two policy years would have been applied against the primary insurance obtained with Ambassador. Only by utilizing the vantage point of hindsight can Value City argue that the Ambassador policies provide no primary coverage for "occurrences" during the periods at issue. Clearly, there was coverage. Value City manifestly discharged its contractual obligation to Integrity to maintain underlying insurance by obtaining the Ambassador policies. Cf. *Donald B. MacNeal, Inc.* v. *Interstate Fire & Cas. Co., supra,* at 568-569, 477 N.E. 2d at 1326 (insured fulfilled its contractual duty to maintain underlying insurance by maintaining such insurance over the periods in which accidents giving rise to potential liability occurred, despite underlying insurer's subsequent insolvency).

A key point is identifying the time frame for analysis. As of the policy periods, occurrences fix the rights of the parties to make claims and establish the obligations and potential liabilities of the insurers. Cf. *Golden Isles Hospital Assn.* v. *Continental Cas. Co., supra* (collectibility of primary insurance is determined as of the date of the occurrence fixing liability); *Donald B. MacNeal, Inc.* v. *Interstate Fire & Cas. Co., supra,* at 568, 477 N.E. 2d at 1325 (policy coverage determined only as of time of incidents creating potential liability). The subsequent event of insolvency does not change the fact of coverage. Under the excess policy, only the type and amount of claims subsequently impact the scope and limits of excess coverage. Subsequent failure of the insurer is not to be confused with failure of policy coverage.

In addition, under paragraph two, Integrity is liable for ultimate net loss which exceeds the greater of the underlying limit of paragraph 2(a) ($500,000) or the retained limit of paragraph 2(b) ($0 and $10,000 for policy periods 1981-1982 and 1982-1983 respectively). Only when the underlying limit is exhausted or reduced below the

---

*Ctr.* v. *Ins. Co. of North America, supra,* at 668, 457 N.Y. Supp. 2d at 672, which found that the primary insurer's insolvency does not exhaust the limits of underlying insurance. While *McConnell* v. *Underwriters at Lloyds of London, supra,* relies without analysis upon an "exhaustion" theory to find that an excess insurer is obligated to bear the risk of a primary insurer's insolvency, other cases reaching the same conclusion have relied directly upon express policy language, *Fageol Truck & Coach Co.* v. *Pacific Indemn. Co., supra,* or upon construction of ambiguous policy language, *Reserve Ins. Co.* v. *Pisciotta, supra; Donald B. MacNeal, Inc.* v. *Interstate Fire & Cas. Co., supra,* rather than an "exhaustion" theory, to reach their result.

retained limit will Integrity's liability for claims, otherwise within the scope of primary coverage, flow from paragraph 2(b).

By contrast, utilizing hindsight, finding coverage under paragraph 2(b) of the excess insurance policy and concluding that the occurrences were not covered by underlying insurance, necessitate finding as a matter of law either that Ambassador's insolvency exhausted the underlying limits of liability, which it cannot under the terms of the contract; or that Value City, in effect, failed to maintain underlying insurance, breaching a condition of the Integrity contract, which is clearly contrary to the . facts. Therefore, Integrity is not obligated as a primary insurer under paragraph 2(b).

In order to argue a construction of the contract finding Integrity primarily liable for its claims, Value City has also alleged that ambiguity exists in the Integrity contract. Value City contends that it is unclear whether Integrity's duties to Value City flow from exhaustion of underlying limits or from the fact that the Ambassador policies provide no coverage.

Ambiguity arises where there are two or more competing interpretations of a contract, and such ambiguity must be construed as a matter of law against the contract's maker. *Gomolka* v. *State Auto. Mut. Ins. Co., supra.* A contract is not ambiguous merely because it is complex or difficult to read as a whole. The conditional legal duties under paragraph two of the insuring agreements do not create ambiguity in the Integrity contract as a matter of law. The trial court, therefore, was not constrained to accept and construe Value City's assertion in its favor on summary judgment.

We agree with the trial court's conclusion that Integrity has no obligation to provide coverage below the $500,000 limit and that Value City dealt with the liquidating insurance company, Am-

bassador, and should bear the risk of loss of its primary coverage.

Value City also seeks to require Integrity to assume the role of its primary carrier and defend claims on its behalf. The defense provisions of the policy state, in pertinent part:

"4. DEFENSE PROVISIONS

"(a) The company shall not be called upon to assume charge of the investigation, settlement or defense of any claim made, or suit brought, or proceedings instituted against the insured, but shall have the right and be given the opportunity to be associated in the defense and trial of any such claims, suits or proceedings relative to any occurrence which, in the opinion of the Company, may create liability on the part of the Company under the terms of this policy. * * *

"(b) With respect to any occurrence not covered by the underlying policies listed in the schedule of underlying insurance, or any other underlying insurance collectible by the insured, but covered by the terms and conditions of this policy the Company shall in addition to the amount of ultimate net loss payable:

"(1) defend any suit against the insured seeking damages on account of personal injury, property damage or advertising liability, even if any of the allegations of the suit are groundless, false or fraudulent; and may make such investigation and settlement of any claim or suit as it deems expedient."

Under paragraph 4(a) Integrity retains the right, at its option, to participate in the defense of claims, suits, or proceedings which might result in liability for the company. We perceive no basis for finding that Integrity has a contractual obligation to defend suits merely because the prayer for relief exceeds the underlying limit and might result in liability for Integrity.

To trigger Integrity's duty to defend under paragraph 4(b), occurrences

must: not be covered by the scheduled underlying insurance; not be covered by other underlying insurance; but be covered by the excess insurance policy. Value City has not shown that the occurrences presented to the trial court were covered by the terms and conditions of the excess insurance policy.

We further find no ambiguity in these sections which should lead us to conclude that Integrity intended to provide for the defense of suits arising out of occurrences merely because the occurrences were not covered by any other underlying insurance collectible by the insured. We conclude, therefore, that the defense provisions of paragraph four do not require Integrity to defend claims against Value City otherwise within the scope of underlying insurance, upon the insolvency of the primary insurer.

Accordingly, reading the contract as a whole in accordance with the plain meaning of the words used, and finding no ambiguity in the scope of coverage, we conclude that the excess insurance contract does not obligate Integrity to step into the shoes of the primary carrier and bear the risk of loss of paying and defending claims within the limits of the underlying insurance upon the event of insolvency of a primary insurance carrier.

Both assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

WHITESIDE and McCORMAC, JJ., concur.

WHITESIDE, J., concurring. Although paragraphs one and two of the insuring agreements of the Integrity policy could arguably be construed as contended by appellants, the policy as a whole requires the result reached by the majority. A basic issue is whether the words "covered by said underlying insurance" in paragraph 2(b) with respect to "retained limit" is limited to insurance which is in effect and collectible. Clarification of the intent of the policy is afforded by paragraph one of the conditions portion of the policy which reads as follows:

"1. Maintenance of Underlying Insurance

"The policy or policies referred to in the attached schedule of underlying insurance or renewals or replacements thereof not more restrictive in coverage, shall be maintained in full effect during the currency of this policy, except for any reduction in the aggregate limit or limits contained therein solely by payment of claims in respect of occurrences happening during the period of this policy. Failure of the insured to comply with the foregoing shall not invalidate this policy but in the event of such failure, the Company shall only be liable to the same extent as if the insured had complied with this condition."

The policy provisions with respect to underlying insurance can be roughly equated to a deductible, but with the understanding that the coverage afforded by the Integrity policy may be more comprehensive than that afforded by the policy specifically set forth in the schedule of underlying insurance. Only where the Integrity policy affords more comprehensive coverage than that afforded by the underlying insurance does the retained limit provision apply. This is evident from paragraph one of the conditions which requires the insured to maintain insurance not more restrictive in coverage than the specified underlying insurance with Integrity entitled to "deduct" the underlying insurance limits if the insured fails to maintain such insurance. The insolvency of the underlying insurer places the insured in essentially the same position as if the insured had failed to maintain the required underlying insurance.

For these additional reasons, I concur in the opinion and judgment.