Joann F. LECHNER, Plaintiff,

v.

Frank B. SCHARRER, Washington County and
Ideal Mutual Insurance Company, Defendants-
Respondents,

The HOME INSURANCE COMPANY, Blue Cross
& Blue Shield of Wisconsin and Integrity
Mutual Insurance Company, Defendants,

PROTECTIVE NATIONAL INSURANCE
COMPANY, Defendant-Appellant.†

Court of Appeals

*No. 87–2311. Submitted on briefs May 25, 1988.—Decided July
6, 1988.*

(Also reported in 429 N.W.2d 491.)

† Petition to review denied.

668

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Douglas J. Carroll,* of *Arnold, Murrary, O'Neill & Schimmel,* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Joseph J. Ferris* of *Kasdorf, Lewis & Swietlik, S.C.,* of Milwaukee.

Before Scott, C.J., Brown, P.J., and Netteshiem, J.

SCOTT, C.J. This appeal raises the issue of whether, under certain circumstances, an excess insurer's coverage "drops down" to assume the liability of a primary insurer when that primary insurer becomes insolvent. We conclude that the answer is dependent on the language of the excess insurance policy. Where the excess insurer agrees to be liable for the excess of the "amount recoverable" under the primary insurances, as the excess insurer in this case agreed, the excess insurance coverage drops down if the primary insurer becomes insolvent. We also concluded that the Wisconsin Insurance Security Fund does not affect the outcome of this case. As these conclusions are in accordance with the trial court's judgment, we affirm.

## FACTS

It was stipulated before the trial court that Frank Scharrer's negligent operation of a vehicle on January 4, 1984, caused injuries to JoAnn Lechner and that her damages were $120,000. The stipulation also provided that Scharrer's negligence was imputed to his employer, Washington county.

At the time of the accident, Washington county was insured by Ideal Mutual Insurance Company and Protective National Insurance Company. Ideal Mutual's policy provided $500,000 of liability coverage for automobile accidents. Protective National's policy had a $5,000,000 limit per occurrence and was an excess or "umbrella" policy.

Several months after the accident, Ideal Mutual was declared insolvent. The question before the trial court was whether this insolvency caused Protective National's excess policy to drop down and become a primary policy. The trial court held that Protective National's policy was ambiguous in this regard and construed it against the insurer, concluding that the excess coverage dropped down. Based on this conclusion and the parties' stipulations, judgment was entered against Protective National for the sum of $120,000 plus costs and attorney's fees.

## PROTECTIVE NATIONAL'S POLICY

As is common, Protective National's policy opens with the agreement to indemnify the insured "subject to the limitations, terms and conditions" of the policy. The "Limit of Liability" section, a major point of contention between the parties, reads, in part, as follows:

*The company shall only be liable for the ultimate net loss the excess of either*

(a) *the amount recoverable under the underlying insurances* as set out in Item 7 of the Declarations, *or*

(b) *the amount of the retained limit* [$10,000] *in respect of each occurrence not covered by said underlying insurances,*

(hereinafter called the "underlying limits"):

and then only up to a further limit [$5,000,000] in respect of each occurrence ... commencing from the effective date and arising out of any hazard for which an aggregate limit of liability applies in the underlying policies scheduled or listed herein. In the event of reduction or exhaustion of the aggregate limits of liability under said underlying insurance by reason of payment of claims in respect of occurrences occurring during the period of this policy, this policy, subject to all the terms, conditions and definitions hereof, shall

(1) in the event of reduction pay the excess of the reduced underlying limit;

(2) in the event of exhaustion continue in force as underlying insurance. [Emphasis added.]

Item 7 in the Declarations lists the primary insurers, including Ideal Mutual's $500,000 automobile liability policy.

Other pertinent provisions include Conditions J & Q:

**J. LOSS PAYABLE.** Liability under this policy with respect to any occurrence shall not attach unless and until the Insured, or the Insured's underlying insurer, shall have paid the amount of the underlying limits on account of such occurrence. ...

. . . .

**Q. MAINTENANCE OF UNDERLYING INSURANCES.** It is a condition of this policy that the underlying insurances as set out in Item 7 of the Declarations shall be maintained in full effect during the currency of this policy except for any reduction of the aggregate limit or limits applica-

ble thereto solely by payment of claims in respect of occurrences occurring during the period of this policy. Failure of the Insured to comply with the foregoing shall not invalidate this policy but in the event of such failure, the Company shall only be liable to the same extent as it would have been had the Insured complied.

The interpretation of insurance policies presents a question of law which we review without deference to the trial court's decision. *See Kremers-Urban Co. v. American Employers Ins. Co.,* 119 Wis. 2d 722, 735, 351 N.W.2d 156, 163 (1984). Whether an insurance policy is ambiguous is also a question of law. *Id.*

We think the ambiguity nearly leaps off the printed page. On the one hand, Protective National requires that the underlying limits must be paid before it becomes obligated (Condition J). On the other hand, Protective National agrees to pay the excess of the "amount recoverable" from the primary insurer (Limit of Liability); here, due to Ideal Mutual's insolvency, the amount recoverable is zero.

Protective National argues that the "Limit of Liability" section, and hence the "amount recoverable" language, cannot be utilized to determine if liability exists. Other sections of the policy must establish liability first; only then do the limits of that liability become applicable. Although this argument possesses some superficial appeal, support for it is not borne out by case law. Most, if not all, relevant cases examined by this court turn on the specific language used in the "Limit of Liability" section.

In *Reserve Ins. Co. v. Pisciotta,* 640 P.2d 764 (Cal. 1982), the California Supreme Court held that the excess coverage dropped down, basing its decision

primarily on the "amount recoverable" language in the liability limitation provision. *Id.* at 770, 772. The same result and reasoning appears in *Donald B. MacNeal, Inc. v. Interstate Fire & Casualty Co.,* 477 N.E.2d 1322, 1324–25 (Ill. App. Ct. 1985).

Both *Reserve* and *MacNeal* relied on the rule that ambiguous insurance policies are to be construed against the insurer and in favor of coverage. *Reserve,* 640 P.2d at 772; *MacNeal,* 477 N.E.2d at 1325. Protective National reminds us that this rule is not to be applied until other rules of construction have been exhausted. *Hemerley v. American Family Mut. Ins. Co.,* 127 Wis. 2d 304, 309, 379 N.W.2d 860, 863 (Ct. App. 1985). No matter which rules of construction are applied, the result will be the same—either the "Limit of Liability" section or Condition J will be rendered superfluous. Such a construction is to be avoided. *Stanhope v. Brown County,* 90 Wis. 2d 823, 848–49, 280 N.W.2d 711, 722 (1979).

We emphasize that our decision is based on the particular language in Protective National's insurance contract, not on a public policy basis. Protective National has cited to us cases where coverage did not drop down. However, those cases involved significantly different policy language.

In those policies where the excess insurer agreed to pay the excess over the underlying "applicable limits," the cases have generally held that coverage does not drop down. *See Molina v. United States Fire Ins. Co.,* 574 F.2d 1176, 1178 (4th Cir. 1978); *Guaranty Nat'l Ins. Co. v. Bayside Resort, Inc.,* 635 F. Supp. 1456, 1457 (D. V.I. 1986); *see also Continental Marble & Granite v. Canal Ins. Co.,* 785 F.2d 1258, 1259 (5th Cir. 1986). *But see Gulezian v. Lincoln Ins. Co.,* 506

N.E.2d 123, 124–26 (Mass. 1987) (equating "applicable" with "recoverable" and "collectible"). Likewise, when the policy covered the excess of the "amounts specified" or "set out" in other portions of the policy (those amounts being the primary insurance limits), the excess insurance did not drop down. *See Radar v. Duke Transp. Inc.,* 492 So. 2d 532, 534 (La. Ct. App. 1986); *St. Vincent's Hosp. & Medical Center v. Insurance Co.,* 457 N.Y.S.2d 670, 672 (Sup. Ct. 1982).

Excess insurance had been held to drop down where the excess insurance policy covers the excess of the "amount recoverable," as in *Reserve* and *MacNeal,* or the excess over "valid and collectable" insurance. *Gros v. Houston Fire & Casualty Ins. Co.,* 195 So. 2d 674, 676–77 (La. Ct. App. 1967).

Based on the above case law and the ambiguity created by the conflicting provisions in Protective National's policy, we conclude that Ideal Mutual's insolvency reduced the "amount recoverable" to zero, thus requiring Protective National's coverage to drop down and become primary coverage.[1]

## THE WISCONSIN INSURANCE SECURITY FUND

Protective National contends that its policy should not drop down because the Wisconsin Insur-

---

[1]Protective National raises another issue with respect to its duty to indemnify, claiming it is not responsible for the $10,000 retained limit. We agree with Ideal Mutual that the retained limit is applicable only in those situations where the loss is not "covered" by the primary insurance policy. Here, the type of loss was "covered" by Ideal Mutual, but not "recoverable" from it. Therefore, by the terms of Protective National's policy, the retained limit is not brought into play.

ance Security Fund (the Fund) becomes the primary insurer in the face of Ideal Mutual's insolvency.[2] Of particular import is the language of sec. 646.31(6)(a), Stats.

> (6) COLLECTION FROM COLLATERAL SOURCES. (a) The portion of a loss claim for which indemnification is provided by other benefits or advantages, which may not be included in the class of claims defined by s. 645.68(3), may not be claimed from the fund under this chapter.

Protective National's argument is as follows: "Section 646.31(6) ... has no application to the situation ... where the excess policy is not called into play by its own terms. ... The Wisconsin Fund statutes do not require an excess insurer to be the insurer of the solvency of primary carriers." The fallacy of this argument is that we have concluded that the excess policy *is* called into play by its own terms. Although ch. 646, Stats., does not mandate this result, the laws of insurance policy interpretation do.

■

Section 646.31(6)(a), Stats., excludes from the Fund's coverage a claim which is indemnified from a collateral source. Therefore, Protective National's argument that the Fund is liable must fall.

## DUTY TO DEFEND

■

Protective National's brief contains a one-paragraph argument that it should not be liable for

---

[2]To this end, a stipulation was entered by the Fund that it would reimburse Protective National should this appeal result in a reversal.

defense costs incurred prior to the trial court's decision on coverage. Although this argument refers to the record, there are no citations to the record; nor are there any citations to authorities or contractual language which supports Protective National's position. This court need not consider arguments unsupported by citations to authority, *State v. Shaffer*, 96 Wis. 2d 531, 545–46, 292 N.W.2d 370, 378 (Ct. App. 1980), or references to the record, *Keplin v. Hardware Mut. Casualty Co.*, 24 Wis. 2d 319, 324, 129 N.W.2d 321, 323 (1964).[3]

*By the Court.*—Judgment affirmed.

---

[3]Were we to consider this issue, we would certainly take note of Protective National's broad "ultimate net loss" definition:

> The term "ultimate net loss" means the total sum which the Insured, or any company as his insurer, or both, become obligated to pay by reason of personal injury, property damage or advertising liability claims, either through adjudication or compromise, and shall also include hospital, medical and funeral charges and all sums paid as salaries, wages, compensation, fees, charges and law costs, premiums on attachment or appeal bonds, interest, expenses for doctors, lawyers, nurses and investigators and other persons, and for litigation, settlement, adjustment and investigation of claims and suits which, [sic] are paid as a consequence of any occurrence covered hereunder, excluding only the salaries of the Insured's or of any underlying insurer's permanent employees.