**ZURICH INSURANCE COMPANY, Plaintiff-Counterdefendant-Appellee,**

v.

**The HEIL COMPANY, Defendant-Counterplaintiff-Appellant.**

**No. 86–1417.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 17, 1986.

Decided April 6, 1987.

John R. Dawson, Foley & Lardner, Milwaukee, Wis., for defendant-counterplaintiff-appellant.

Robert Marc Chemers, Pretzel & Stouffer, Chtd., Chicago, Ill., for plaintiff-counterdefendant-appellee.

Before POSNER and RIPPLE, Circuit Judges, and CAMPBELL, Senior District Judge.*

RIPPLE, Circuit Judge.

In this diversity case, Zurich Insurance Company (Zurich) filed a complaint seeking a declaratory judgment against The Heil Insurance Company (Heil) to determine which party, the insured or the excess liability insurer, bears the risk of a primary insurer becoming insolvent. The district court, granting Zurich's motion for judgment on the pleadings, found that the insured bears that risk. We affirm.

I

Facts

The facts in this case are undisputed. Zurich issued Heil four one-year commercial umbrella liability insurance policies providing coverage from 1978–1982 for personal injury, property damage and advertising liability in excess of Heil's primary insurance coverage. Under these agreements, Heil was obligated to maintain primary insurance of $1 million per each occurrence and $2 million in annual aggregate. Zurich provided insurance for incidents that exceeded these limits, but Zurich's ultimate liability was limited to $5 million per occurrence and $5 million in annual aggregate.

Heil originally obtained the primary insurance coverage from the Hartford Accident and Indemnity Company, Northbrook Insurance Company, Northbrook Excess and Surplus Insurance Company and Northwestern National Insurance Company. In August 1982, Heil changed its carri-

---

* The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, sitting by designation.

er for the primary insurance coverage. For the period from November 1, 1978 to November 1, 1981, Ideal Mutual Insurance Company (Ideal) became the sole primary insurer. From November 1, 1981 to November 1, 1982, Ideal was the primary insurer only to the extent of $100,000 per occurrence and $1 million in annual aggregate. Mission National Insurance Company provided the remainder of the necessary primary insurance for that year.

Zurich approved this substitution of primary carriers. Zurich's approval of the change, however, was conditioned on the requirement that the new underlying insurance coverage be comparable to the insurance then in effect and that the coverage limits be the same. On December 26, 1984, the Superintendent of Insurance for the State of New York declared Ideal insolvent. On February 7, 1985, Ideal was placed into liquidation.

Heil, as a Wisconsin corporation, is eligible to receive $300,000 worth of insurance coverage on a single risk from the Wisconsin Insurance Security Fund (Wisconsin Fund). Heil, therefore, has a gap in its primary insurance coverage between the $300,000 provided by the Wisconsin Fund and the $1 million coverage previously provided by Ideal. The existence of this gap raises the issue of whether Zurich, as the excess liability insurer, must assume the obligations of the insolvent primary insurer.

In its complaint, Zurich contended that its coverage under the policies issued to Heil obligated it to pay only for the ultimate net loss in excess of $1 million for each occurrence and $2 million in annual aggregate. Zurich requested the district court to declare the rights and liabilities of the parties and moved for judgment on the pleadings under Fed.R.Civ.P. 12(c). Heil filed a counter-motion for summary judgment, contending that Zurich is obligated to "drop down" and assume the obligations of the insolvent primary insurer, Ideal.

After examining the terms of Zurich's policy, the district court found that Zurich was under no obligation to provide coverage when the primary carrier became insol-

vent. The district court determined that the policy's language is unambiguous and construed the plain meaning of the contract to require Zurich to provide coverage only for occurrences that take place during the policy period. The district court concluded that the insolvency of the primary insurer did not constitute an "occurrence" as defined by the policy. Moreover, the district court decided that the limits of liability provide that Zurich's obligation to provide coverage arises only after the amount of claims exceeds $1 million per occurrence or $2 million in annual aggregate. Accordingly, the district court granted Zurich's motion for judgment on the pleadings.

## II

### Analysis

The district court found, and the parties do not dispute, that Wisconsin law governs the relationship between the parties in this diversity action when it differs substantively from the law of the forum, Illinois. *See International Adm'rs v. Life Ins. Co.,* 753 F.2d 1373, 1376 n. 4 (7th Cir.1985) ("Conflicts rules are appealed to only when a difference in law will make a difference to the outcome."). Under both Wisconsin and Illinois law, if the provisions of the insurance policy are clear and unambiguous, then the policy's provisions should be interpreted according to their plain meaning. *Playboy Enter., Inc. v. St. Paul Fire & Marine Ins. Co.,* 769 F.2d 425, 428 (7th Cir.1985) (applying Illinois law); *Bradley Bank v. Hartford Accident & Indem. Co.,* 737 F.2d 657, 660 (7th Cir.1984) (applying Wisconsin law); *United States Fire Ins. Co. v. Schnackenberg,* 88 Ill.2d 1, 57 Ill. Dec. 840, 842, 429 N.E.2d 1203, 1205 (1981); *Welter v. Singer,* 126 Wis.2d 242, 376 N.W.2d 84, 86 (1985). If an ambiguity exists, however, the court will construe the ambiguity in favor of the insured because the insurer drafted the policy. *Playboy Enter., Inc.,* 769 F.2d at 428; *Simioni, by Cagney v. Continental Ins. Cos.,* 135 Ill. App.3d 916, 90 Ill.Dec. 615, 617, 482 N.E.2d 434, 436 (1985); *Cunningham v. Metropolitan Life Ins. Co.,* 121 Wis.2d 437, 360 N.W.2d 33, 39 (1985). The interpretation of

an insurance contract is a question of law to be decided by the court. *Management Support Assoc. v. Union Indem. Ins. Co. of New York*, 129 Ill.App. 1089, 85 Ill.Dec. 37, 40, 473 N.E.2d 405, 408 (Ill.App.1984); *Kremers-Urban Co. v. American Employers Ins. Co.*, 119 Wis.2d 722, 351 N.W.2d 156, 163 (1984).

Applying these generally-accepted rules governing the interpretation of insurance contracts, we must first examine the terms of the insurance policy to determine whether the language is ambiguous. Zurich's policy, in pertinent part, provides:

> With respect to personal injury, property damage or advertising liability, or any combination thereof, the company's liability shall be only for the ultimate net loss in excess of the insured's retained limit, the latter being defined as the greater of:
>
> (a) an amount equal to the limits of liability shown for the underlying insurance (listed in Schedule A hereof) [$1 million per occurrence and $2 million annual aggregate], plus the applicable limits of any other underlying insurance collectible by the insured; or
>
> (b) the amount specified in Item 3(c) of the Limits of Liability section [$10,000] of the Declarations as the result of any one occurrence not covered by the said insurance;
>
> and then for an amount not exceeding the amount specified in Item 3(a) of the Limits of Liability section of the Declarations as the result of any one occurrence.
>
> . . . .
>
> In the event that the aggregate limits of liability of the underlying policies listed in Schedule A are reduced or exhausted, the company shall, subject to the company's limit of liability which is stated above and to the other conditions of this policy, with respect to occurrences which take place during the period of this policy continue in force as excess of the reduced primary insurance or, in the event of exhaustion, continue in force as underlying insurance.

R. 1, Ex. A at 2.

Heil contends that the district judge incorrectly interpreted the "drop down" clause requiring Zurich to provide primary coverage when the aggregate limits of liability of the underlying policies are reduced or exhausted. Heil first argues that Ideal's insolvency exhausted the underlying insurance coverage and thus Zurich must assume Ideal's obligations. Heil further claims that the only ambiguity contained in the policy is whether the underlying coverage can be reduced or exhausted by the insolvency of the primary insurer, or merely through the payment of claims. According to Heil, the underlying policy can be reduced or exhausted both by the payment of claims and by the insolvency of the underlying insurer. Relying on the generally-accepted rule of construction that ambiguous terms in a policy are interpreted in favor of the insured and against the maker of the policy, Heil contends that the ambiguous terms "reduced" and "exhausted" should be construed in its favor. Heil further supports its position by stating that other excess insurance policies specifically exclude coverage in the event of the underlying insurer's insolvency. Heil maintains that, because Zurich failed to include such a provision in its policy, Zurich should bear the risk of the primary insurer's insolvency.

We disagree with Heil's contentions. Both the plain meaning of the insurance policy and other cases construing similar policies support the district court's holding that Zurich is not obligated to drop down and provide coverage in place of the insolvent primary insurer. Zurich's duty to serve as the underlying insurer arises only after the primary insurer has paid claims up to $2 million annual aggregate or $1 million per occurrence.

The policy states that:

> It is warranted by the insured that the underlying policy(ies) listed in Schedule A, or renewals or replacements thereof not more restricted, shall be maintained in force *as collectible insurance* during the currency of this policy, except for any reduction of the aggregate limit(s) contained therein *solely by reason of losses in respect of occurrences happen-*

*ing during the policy period.* In the event of failure by the insured so to maintain such policy(ies) or to meet all conditions and warranties subsequent to loss under such policy(ies), the insurance afforded by this policy shall apply *in the same manner it would have applied had such policy(ies) been so maintained in force.*

R. 1, Ex. A at 7 (emphasis added). This provision places the burden on Heil to maintain the underlying insurance in force as collectible. It clearly states that Zurich will only cover reductions in the underlying aggregate limit resulting from occurrences causing a loss during the policy period. Occurrence is defined as "an accident or happening or event or injurious exposure to conditions, which results, during this policy period, in such personal injury, or property damage neither expected nor intended from the standpoint of the insured." R. 1, Ex. A at 4. Thus, after examining the plain language of the insurance contract, it is evident that Zurich is not obligated to "drop down" and provide the underlying coverage because of the primary insurer's insolvency.

Case law provides further support for this interpretation of the insurance policy. Several courts have decided whether an excess insurer assumes the risk of a primary insurer's insolvency. These courts have adopted a case-by-case approach, analyzing each policy's terms to determine the excess insurer's liability under that policy. As Heil indicates, some courts have interpreted policy language as requiring the excess insurer to provide underlying coverage when the primary insurer has become insolvent. *See Reserve Ins. Co. v. Pisciotta,* 30 Cal.3d 800, 180 Cal.Rptr. 628, 640 P.2d 764 (1982) (en banc); *Donald B. Mac-Neal, Inc. v. Interstate Fire & Casualty Co.,* 132 Ill.App.3d 564, 87 Ill.Dec. 794, 477 N.E.2d 1322 (1985). In other cases, the policy language did not require the excess insurer to drop down and provide primary coverage. *See Mission Nat'l Ins. Co. v.*

*Duke Transp. Co.,* 792 F.2d 550 (5th Cir. 1986); *Molina v. United States Fire Ins. Co.,* 574 F.2d 1176 (4th Cir.1978); *Guaranty Nat'l Ins. Co. v. Bayside Resort, Inc.,* 635 F.Supp. 1456 (D.V.I.1986). We agree with the district court that the policy in this case does not require Zurich to provide coverage for the insolvent underlying carrier, Ideal.

In *Reserve Ins. Co.* and *Donald B. Mac-Neal, Inc.,* the excess insurer's liability arose from a policy term providing that the excess insurers assumed liability for any excess over the "amount recoverable" under the underlying policy. The courts in these cases found that that language was ambiguous because it might be interpreted as holding the excess insurer liable either for amounts over the dollar limits of the underlying insurance or for amounts that the insured was unable to recover from the primary insurer because of its insolvency. Because the courts found the term to be ambiguous, they construed the provision in favor of the insured, thereby requiring the excess insurer to provide the underlying insurance coverage. *Reserve Ins. Co.,* 640 P.2d at 772; *Donald B. MacNeal, Inc.,* 87 Ill.Dec. at 797, 477 N.E.2d at 1325.

In this case, however, the policy provided that Zurich's "liability shall be only for the ultimate net loss in excess of the insured's retained limit." R. 1, Ex. A at 1. The policy defines the retained limit as the greater of:

(a) an amount equal to the limits of liability shown for the underlying insurance [$1 million per occurrence, $2 million annual aggregate], plus the applicable limits of any other underlying insurance collectible by the insured; or

(b) the amount specified in Item 3(c) of the Limits of Liability section of the Declarations as the result of any one occurrence [$10,000].

R. 1, Ex. A at 2. In another policy containing similar language,[1] the Fourth Circuit

---

1. Under the policy in *Molina v. United States Fire Ins. Co.,* 574 F.2d 1176 (4th Cir.1978), the insurance company agreed to pay "the ultimate net loss in excess of the retained limit which the

insured shall become legally obligated to pay." *Id.* at 1178. This retained limit was defined as "the total of the applicable limits of the underly-

held that a plain reading of the policy mandated the conclusion that the excess insurer was obligated to pay "only the ultimate net loss in excess of the policy limits" contained in the primary insurer's policies. *Molina v. United States Fire Ins. Co.*, 574 F.2d 1176, 1178 (4th Cir.1978); *see also Radiator Specialty Co. v. First State Ins. Co.*, 651 F.Supp. 439, 442 (W.D.N.C.1987).

Furthermore, Heil's argument that the underlying policy is exhausted because Ideal is unable to pay any claims under the policy finds no support in the case law. Several courts have interpreted policies that provide: "In the event of reduction or exhaustion of the aggregate limits of liability under said underlying insurance *by reason of losses paid thereunder,* this policy ... shall ... in the event of exhaustion continue in force as underlying insurance" (emphasis added). These courts have held that the policy means exactly what it says—the excess insurer functions as the primary insurer only when the exhaustion occurs by reason of losses paid under the policy. *See Mission Nat'l Ins. Co.*, 792 F.2d at 553; *Guaranty Nat'l Ins. Co.*, 635 F.Supp. at 1459.

> The policy in this case provides that: In the event that the aggregate limits of liability of the underlying policies ... are reduced or exhausted, the company [Zurich] shall, subject to the company's limit of liability ... *and to the other conditions of this policy,* with respect to occurrences which take place during the period of this policy continue in force as excess of the reduced primary insurance or, in the event of exhaustion, continue in force as underlying insurance.

R. 1, Ex. A at 2 (emphasis added). Although this language does not as clearly absolve Zurich of liability as did the policy language in *Mission Nat'l Ins. Co.*, it certainly does establish that Zurich is obligated to function as the underlying insurer only if the primary insurance is reduced or exhausted after the other conditions in the policy have been fulfilled. Zurich need only serve as the primary insurer after the underlying insurer has paid claims up to its

retained limit. Therefore, Zurich is not responsible for covering the insolvent primary insurer's payments.

Further, the consequences resulting from a rule requiring an excess insurer to bear the risk of a primary insurer's insolvency when not mandated by the clear language of the policy dictate our conclusion that Zurich is under no obligation to assume Ideal's role as primary insurer. "Imposing the duty of indemnification on [an excess liability insurer] would, in effect, transmogrify the policy into one guaranteeing the solvency of whatever primary insurer the insured might choose." *Continental Marble & Granite v. Canal Ins. Co.*, 785 F.2d 1258, 1259 (5th Cir.1986). Zurich did not contract to bear the risk of the primary carrier's insolvency, nor do its premiums reflect the cost that the assumption of this risk would entail. As the Fifth Circuit noted, an excess liability insurer does not anticipate such a burden: "Excess or secondary coverage is coverage whereby, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted. A second insurer thus greatly reduces his risk of loss. This reduced risk is reflected in the cost of the policy." *Id.* (quoting *Whitehead v. Fleet Towing Co.*, 110 Ill.App.3d 759, 66 Ill.Dec. 449, 453, 442 N.E.2d 1362, 1366 (1982)). As the policy language indicates, Zurich's promise to provide Heil with excess liability insurance did not include a pledge to provide primary insurance if the underlying carrier became insolvent. *See also Radiator Specialty Co. v. First State Ins. Co.*, 651 F.Supp. 439, 442 (W.D.N.C.1987).

In sum, the unambiguous language of the insurance policy, plainly read, does not require Zurich to assume responsibility for providing the underlying coverage for the insolvent primary carrier. Accordingly, we affirm the judgment of the district court.

AFFIRMED..

ing policies listed in Schedule A [$100,000 per claim and $300,000 in aggregate]." *Id.*