**HUDSON INSURANCE COMPANY, a corporation, Plaintiff,**

v.

**GELMAN SCIENCES INC., a corporation, Defendant.**

**No. 88 C 4369.**

United States District Court, N.D. Illinois, E.D.

Jan. 20, 1989.

John W. Morrison and Jeffrey T. Kraus, Altheimer & Gray, Chicago, Ill., for plaintiff.

Gary L. Starkman, Brian D. Vandenberg, David Fink, Michael Caldwell, Arvey, Hodes, Costello & Burman, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Hudson Insurance Company is a Delaware corporation that has its principal place of business in New York. From August 1, 1984 to August 1, 1985, Hudson provided Gelman Sciences, Inc., a Michigan-based corporation, with excess umbrella liability coverage in the amount of $4 million. This policy sat atop various other policies issued by other companies to Gelman, including a primary comprehensive general liability policy issued by Fireman's Fund Insurance Company, a primary products and completed operations liability policy issued by Central National Insurance Company, and a $20 million excess umbrella liability policy issued by Mission National Insurance Company. Gelman obtained the Hudson policy through a Michigan agent who in turn contacted an Illinois-based wholesale insurance broker. The insurance policy was stamped countersigned and initialed on behalf of Hudson in Illinois, then delivered to the insurance broker in Chicago.

The Mission policy was in excess of Gelman's primary insurance coverage, including that provided by Fireman's Fund and Central National. After Hudson issued its policy to Gelman, however, Mission became insolvent. A California court subsequently liquidated Mission in 1987, and thus Mission is unable to provide Gelman with its promised excess umbrella liability coverage. This is unfortunate for Gelman, as it presently faces four lawsuits which Gelman anticipates will exhaust its primary coverage under the Fireman's Fund and Central National policies. Gelman thus has

demanded on several occasions that Hudson "drop down" from its position as Gelman's second excess umbrella liability carrier and assume Mission's obligations. Gelman also has asked Hudson to defend Gelman in the four suits. Hudson has refused all of these requests.

Tired of Gelman's demands, Hudson has sought a declaratory judgment in two counts before this court. Gelman has counterclaimed. Hudson has moved for summary judgment on Count 1 of its Amended Complaint and on Count 2 of Gelman's counterclaim. Both counts focus solely on Hudson's duties to drop down and to defend.

The parties agree that, for purposes of this motion, Illinois law governs this dispute. See *Hudson Insurance Company v. Gelman Sciences, Inc.*, No. 88 C 4369 (Minute Order August 17, 1988) (canvassing why Illinois law will apply to issues of interpretation of the Hudson insurance contract). Both sides agree further that the Hudson insurance contract governs, or is at least the starting point for determining, Hudson's duties to defend Gelman or to drop down in place of Mission. With respect to Hudson's duty to defend Gelman, the Hudson insurance contract states as follows:

**6. SETTLEMENT AND DEFENSE**

Anything in the Underlying Insurance to the contrary notwithstanding, Hudson shall not be obligated to assume charge of the settlement or defense of any claim or suit brought or proceeding instituted against the Insured. Hudson, at its option but not being required to, shall have the right and be given the opportunity to associate with the Insured in the defense or control of any claim, suit or proceeding which appears reasonably likely to involve Hudson, in which event the Insured and Hudson shall cooperate in all things in the defense or control of such claim, suit or proceeding. In the event costs are incurred by Hudson with respect to such claim, suit or proceeding, Hudson shall pay its incurred costs plus expenses incurred by the Insured with Hudson's approval.

Gelman does not challenge Hudson's contention that this clause allows Hudson to enter into defense of claims against Gelman, but does not obligate Hudson to do so. Gelman also has not offered any reasons why this court should not respect Hudson's choice not to defend Gelman in any of the cases now pending against Gelman. This court thus will not disturb Hudson's decision.

Gelman saves its arguments for Hudson's other alleged duty, that to drop down when excess umbrella liability insurers below it become insolvent. Hudson claims that it has no such duty under the contract, according to the following provision:

**2. LIMIT OF LIABILITY**

Hudson shall be liable for the Limit of Liability stated in Item 3 of the Declarations which is in excess of the Total Underlying Insurance Limit of Liability stated in Item 4 of the Declarations, provided that Hudson's liability shall be limited to the amount stated in Item 3 as applicable to "each occurrence," "each person" or "each claim," and further limited to the amount stated in Item 3 as "aggregate" with respect to each annual period while this policy is in force.

Liability of Hudson under this policy shall not attach unless and until the Insured or the Insured's Underlying Insurance has paid or has been held liable to pay the Total Underlying Insurance Limit of Liability, as stated in Item 4 of the Declarations.

The contract reveals that Item 3 is $4 million. Under Item 4 the contract reads: "TOTAL UNDERLYING LIMIT OF LIABILITY: $20,000,000 EACH OCCURRENCE AND ANNUAL AGGREGATE WHERE APPLICABLE EXCESS OF UNDERLYING INSURANCE AND/OR SELF–INSURED RETENTION." Item 5 sets forth a schedule of underlying insurance, which references the schedule of underlying insurance contained in the Mission policy and the Mission policy's $20 million limit of first umbrella liability insurance.

Reasoning from these provisions, Hudson contends that since Mission has not paid or been held liable to pay its limit of

liability, Hudson's liability under its own policy does not attach. This court agrees. Under Illinois law, a court must give the words of an insurance policy their plain and ordinary meaning, and not search for ambiguities where there are none. See *United States Fire Ins. Co. v. Schnackenberg*, 88 Ill.2d 1, 4–5, 57 Ill.Dec. 840, 842, 429 N.E.2d 1203, 1205 (1981). Clause 2 plainly states that Hudson is not liable to Gelman until the underlying insurers have paid or are held liable.

Gelman argues that Clause 2 is ambiguous, and thus Hudson is not entitled to summary judgment. A contract is ambiguous under Illinois law where it is " 'reasonably and fairly susceptible to more than one meaning.' " *Metalex Corporation v. Uniden Corporation of America*, 863 F.2d 1331 (7th Cir.1988), quoting *Lenzi v. Morkin*, 116 Ill.App.3d 1014, 1016, 72 Ill.Dec. 414, 416, 452 N.E.2d 667, 669 (1983). Gelman submits that in addition to Clause 2, the contract contained Clause 3:

### 3. MAINTENANCE OF UNDERLYING INSURANCE

It is a condition of this policy that the policy or policies referred to in Declaration 5, and any renewal or replacement thereof not more restrictive, shall be maintained in full effect during the currency of this Policy without alteration of terms or conditions except for any reduction or exhaustion of the aggregate limit contained therein solely by reason of losses arising out of occurrences that take place during the period of this policy. Failure of the Insured to comply with the foregoing shall not invalidate this Policy, but in the event of such failure Hudson shall be liable hereunder only to the extent that it would have been liable had the Insured complied therewith.

Gelman contends that Hudson would not have included this provision had Hudson believed that it would not have to drop down and take the place of insolvent underlying insurers. According to Gelman, this makes Clause 2 susceptible to more than one interpretation, and so Hudson does not deserve summary judgment.

This court believes that Clause 3 does not make Clause 2 reasonably and fairly susceptible to an interpretation other than that offered by Hudson. In *Zurich Ins. Co. v. Heil Co.*, 815 F.2d 1122, 1124–25 (7th Cir.1987), the court held that a maintenance clause in an umbrella insurance policy worked only to require the insured to maintain its underlying insurance or else face reductions in umbrella coverage. The clause did not enlarge other provisions in the contract, especially those describing when the umbrella insurer would be liable. While *Zurich* was a case that rested on Wisconsin law, Wisconsin and Illinois share a common position on how a court must construe unambiguous contracts, see *id.* at 1123, and what constitutes an ambiguity, see *Garriguenc v. Love*, 67 Wis.2d 130, 135, 226 N.W.2d 414, 417 (1975) (insurance contracts are ambiguous when they are reasonably or fairly susceptible to more than one construction).

Gelman argues further that Illinois presumes that secondary excess umbrella liability carriers will step down when underlying insurers go bankrupt, and cites the case of *Donald B. MacNeal, Inc. v. Int. Fire & Cas.*, 132 Ill.App.3d 564, 87 Ill.Dec. 794, 477 N.E.2d 1322 (1985), as authority for this proposition. As the Seventh Circuit noted in *Zurich*, 815 F.2d at 1125, and as anyone who reads *MacNeal* closely will understand, *MacNeal* does not establish a presumption of law that an insurer must somehow expressly deny. The court in *MacNeal* found that the limit of liability provision in the contract before that court was ambiguous, as it allowed for liability in excess of amounts "recoverable" under underlying insurance policies. The court held that when an underlying insurer became insolvent, the insured could not recover the amount of his policy, and thus the court could reasonably and fairly interpret the policy as making the excess insurer liable in that situation. Having decided that the excess policy was ambiguous, the court applied the Illinois rule that a court should construe ambiguities in an insurance contract most strongly against the insurer and in favor of the insured. This lead the *MacNeal* court to conclude that, in effect,

the excess insurer stepped down when an underlying insurer went bankrupt. *Mac-Neal*, 132 Ill.App.3d at 567–68, 87 Ill.Dec. 794, 477 N.E.2d 1322.

This court will not have the opportunity to construe Clause 2 "most strongly" against Hudson. Clause 2 is unambiguous: Hudson becomes liable only "unless and until [Gelman] or [Gelman's] Underlying Insurance has paid or has been held liable to pay the Total Underlying Insurance Limit of Liability, as stated in Item 4" of the Hudson contract. Until that event occurs, Hudson does not become liable under its policy.

This court enters summary judgment in favor of Hudson Insurance Company on Count 1 of its Amended Complaint and on Count 2 of the Counterclaim filed by Gelman Sciences, Inc.