914 F.2d 260
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
HUDSON INSURANCE COMPANY, a corporation, Plaintiff-Appellee,
v.
GELMAN SCIENCES, INCORPORATED, a corporation, Defendant-Appellant.
 No. 89-2893.
 United States Court of Appeals, Seventh Circuit.
 Argued June 12, 1990.
Decided Sept. 18, 1990.
 
 Before POSNER, EASTERBROOK and MANION, Circuit Judges.
 
 ORDER
 
 1
 Hudson Insurance Company (Hudson) contracted with Gelman Sciences, Inc. (Gelman) to provide $4 million in excess umbrella liability coverage. Gelman's primary insurer, Central National Insurance Company (Central), provided Gelman with an initial one million dollars of liability coverage. Mission National Insurance Company (Mission) insured Gelman for the next $20 million in liability. Thus Hudson covered any liability between $21 and $25 million.
 
 
 2
 Mission became insolvent and was placed in liquidation, leaving Gelman exposed for liability coverage between $1 and $21 million. Gelman, the defendant in four lawsuits, notified Hudson that it expected Hudson to "drop down" and indemnify Gelman for any liability between $1 and $5 million.[1] Gelman also requested that Hudson defend it in the four lawsuits.[2] Hudson declined both requests, and instead sought a declaratory judgment from the district court clarifying its rights and obligations. The district court, in Hudson Ins. Co. v. Gelman Sciences, Inc., 706 F.Supp. 25 (N.D.Ill.1989), held that the contract was unambiguous in limiting Hudson's coverage to Gelman's liability between $21 and $25 million, and therefore granted summary judgment for Hudson. We affirm.
 
 
 3
 Gelman first argues that the language of the insurance contract is ambiguous as to whether Hudson must "drop down." Therefore Hudson should lose because under Illinois law[3] any ambiguity must be construed in favor of the insured. Gelman also contends that even if the contract is clear that Hudson need not "drop down," public policy in Illinois compels excess liability insurers to bear the risk any time an underlying carrier becomes insolvent. Neither argument has merit.
 
 
 4
 The relevant provisions of the insurance contract speak clearly as to the agreement between Hudson and Gelman. Clause 2, the "Limit of Liability" section, states:
 
 
 5
 Hudson shall be liable for the Limit of Liability stated in Item 3 of the Declarations [$4 million] which is in excess of the Total Underlying Insurance Limit of Liability stated in Item 4 of the Declarations [$20 million plus $1 million of primary coverage], provided that Hudson's liability shall be limited to the amount stated in Item 3 as applicable to "each occurrence," "each person" or "each claim," and further limited to the amount stated in Item 3 as "aggregate" with respect to each annual period while this policy is in force.
 
 
 6
 Liability of Hudson under this policy shall not attach unless and until the Insured or the Insured's Underlying Insurance has paid or has been held liable to pay the Total Underlying Insurance Limit of Liability, as stated in Item 4 of the Declarations.
 
 
 7
 Gelman points to Clause 3, "Maintenance of Underlying Insurance," and contends this clause creates an ambiguity. Clause 3 provides:
 
 
 8
 It is a condition of this policy that the policy or policies referred to in Declaration 5, and any renewal or replacement thereof not more restrictive, shall be maintained in full effect during the currency of this Policy without alteration of terms or conditions except for any reduction or exhaustion of the aggregate limit contained therein solely by reason of losses arising out of occurrences that take place during the period of this policy. Failure of the Insured to comply with the foregoing shall not invalidate this Policy, but in the event of such failure Hudson shall be liable hereunder only to the extent that it would have been liable had the Insured complied therewith.
 
 
 9
 Gelman argues that it "maintained in full effect" the underlying coverage and should not be held responsible for Mission's insolvency. It contends Clause 3 indicates that Hudson will "drop down" and assume the liabilities of an insolvent underlying carrier so long as Gelman maintained the underlying policies during the Hudson policy period.
 
 
 10
 We disagree. Illinois law of contract interpretation provides that "words in the policy should be given their plain and ordinary meaning, and the court should not search for an ambiguity where there is none." United States Fire Ins. v. Schnackenberg, 429 N.E.2d 1203, 1205 (Ill.1981). Because Mission has not paid or been held liable to pay its $20 million underlying limit of liability, Hudson's liability does not attach. The district court was correct that Clause 2 "plainly states that Hudson is not liable to Gelman until the underlying insurers have paid or are held liable." Hudson, 706 F.Supp. at 27.
 
 
 11
 Clause 3 not only does not create any ambiguities, it further clarifies the agreement between the parties. The final sentence--"Failure of the Insured to comply with the foregoing shall not invalidate this Policy, but in the event of such failure Hudson shall be liable hereunder only to the extent that it would have been liable had the Insured complied therewith."--can only mean that whether Gelman maintains a collectible underlying policy or not is irrelevant to Hudson, because Hudson's liability remains limited to Gelman's losses between $21 and $25 million. Further, Gelman attempts to rely on supposedly ambiguous language in Clause 3 at the expense of the rest of the agreement between the parties. But the "intent of parties to a contract must be determined with reference to the contract as a whole, not by reference to particular words or isolated phrases, but by viewing each part in light of the others." United Equitable Ins. v. Reinsurance Co., 510 N.E.2d 914, 918 (Ill.App. 1 Dist.1987) (citation omitted). Reading this agreement between Hudson and Gelman as a whole, there is no doubt about the respective rights and obligations of the parties.
 
 
 12
 Gelman relies on McNeal v. Int. Fire & Cas., 477 N.E.2d 1322 (Ill.1985), for the proposition that secondary excess umbrella liability insurers must "drop down" when an underlying insurer becomes insolvent. However, McNeal is inapplicable here because the insurance contract in that case contained a provision thought to be ambiguous by the Illinois court. That provision
 
 
 13
 allowed for liability in excess of amounts 'recoverable' under underlying insurance policies. The court held that when an underlying insurer became insolvent, the insured could not recover the amount of his policy, and thus the court could reasonably and fairly interpret the policy as making the excess insurer liable in that situation.
 
 
 14
 Hudson, 706 F.Supp. at 27. There is no similar provision in this contract, and there is no ambiguity to be construed in favor of the insured. See McNeal, 477 N.E.2d at 1324.
 
 
 15
 We find more appropriate a comparison with our decision in Zurich Ins. Co. v. Heil Co., 815 F.2d 1122 (7th Cir.1987). In a case applying Wisconsin law, we distinguished McNeal's "amount recoverable" language from an insurance contract with language similar to the Hudson-Gelman agreement. Relying on the "plain language" of the contract, we held that the excess insurer was not required to "drop down" to provide coverage for the insolvent underlying insurer. We reached a similar decision applying Indiana law in U.S. Fire Ins. Co. v. Charter Financial Group, 851 F.2d 957 (7th Cir.1988). We again distinguished McNeal because of the "amount recoverable" language, and found that the excess insurer need not "drop down," stating that
 
 
 16
 The majority of courts ... have found that in the absence of language promising to pay above amounts 'recoverable,' excess insurance contracts do not obligate the excess insurer to provide primary coverage when the underlying insurer has become insolvent. The cases focus on the words describing the limit below which the excess insurance will not cover loss or damage.... These courts effectively held that the reference in the excess policies to underlying insurance related only to the stated limits of that listed underlying insurance. Therefore, the excess coverage started at the level of underlying insurance ... whether or not such primary insurance had been paid, was recoverable, or was even in effect on the date of the insurable event.
 
 
 17
 U.S. Fire Ins. Co., 851 F.2d at 961.
 
 
 18
 Gelman's public policy argument is equally unavailing. If anything, public policy requires that contracts be interpreted to effectuate the actual agreement between the parties. Hudson's premiums surely would have been higher if it had suspected it might have to drop down if the underlying insurer became insolvent. In Zurich, 815 F.2d at 1126, we stated that
 
 
 19
 the consequences resulting from a rule requiring an excess insurer to bear the risk of a primary insurer's insolvency when not mandated by the clear language of the policy dictate our conclusion that [the excess insurer] is under no obligation to assume [the underlying insurer's] role as primary insurer.... [The excess insurer] did not contract to bear the risk of the primary carrier's insolvency, nor do its premiums reflect the cost that the assumption of this risk would entail.
 
 
 20
 The plain meaning of the agreement between Hudson and Gelman is that Hudson will cover any losses of Gelman between $21 and $25 million. The judgment of the district court is
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 At oral argument counsel for Gelman notified the court that Gelman had recently been held liable for approximately $2 million in an Ohio products liability lawsuit. Thus the resolution of Hudson's request for a declaratory judgment will not only clarify the rights of the parties, but will also determine if Gelman has insurance protection for the $1 million excess exposure already incurred
 
 
 [2]
 The district court concluded that Hudson had no duty to defend Gelman, and Gelman does not appeal that issue
 
 
 [3]
 The parties agreed before the district court that Illinois law applies to issues of contract interpretation. Hudson Ins. Co. v. Gelman Sciences, Inc., 706 F.Supp. 25, 26 (N.D.Ill.1989)