**NEW PROCESS BAKING COMPANY,**
**Plaintiff–Appellant,**

v.

**FEDERAL INSURANCE COMPANY,**
**Defendant–Appellee.**

No. 89–3460.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 24, 1990.

Decided Jan. 15, 1991.

Stephen E. Sward, Michael C. Borders, Rooks, Pitts & Poust, Chicago, Ill., for plaintiff-appellant.

Carol J. Gerner, Edward T. Butt, Jr., Wildman, Harrold, Allen & Dixon, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, WOOD, JR. and RIPPLE, Circuit Judges.

PER CURIAM.

New Process Baking Company ("New Process") filed a complaint for declaratory judgment against Federal Insurance Company ("Federal") in the Circuit Court of Cook County, Illinois. Pursuant to 28 U.S.C. § 1441 it was removed to the district court where summary judgment was granted to Federal.

Oswald Jaeger Baking Company was a division of New Process, and in October 1984 a Jaeger truck collided with a vehicle driven by Lori Prigge in Wausau, Wisconsin, causing serious neurological injuries to Prigge. As a result, her guardian filed a suit in the Circuit Court of Milwaukee County, Wisconsin, claiming damages for $5,000,000.

At the time of the accident, New Process had three levels of insurance coverage. Casualty Insurance Company issued a primary insurance policy with a single limit of liability of $500,000. Mission National Insurance Company issued an excess liability policy to New Process for the same period with a $20,000,000 limit of liability. Federal also issued an excess liability policy to New Process with a $10,000,000 limit in excess of the limits of the underlying Casualty and Mission policies. Mission was declared insolvent in 1987, so that no insur-

ance under its policy is available to New Process.

In its complaint, New Process contended that the insolvency of Mission obligates Federal, under its third-level policy with New Process, to "drop down" and provide coverage to New Process in excess of its existing $500,000 primary coverage. The parties agree that Illinois substantive law governs the action and that the insurance contract, if ambiguous, should be construed in favor of the insured, New Process. See *Donald B. MacNeal, Inc. v. Interstate Fire & Casualty Co.*, 132 Ill. App.3d 564, 87 Ill.Dec. 794, 796, 477 N.E.2d 1322, 1324 (1985). The district court rendered an opinion concluding that the language of the contract did not obligate Federal to "drop down." We agree.

The pertinent parts of the Federal policy provide as follows:

1. The Insuring Agreement:

In consideration of the payment of the required premium and subject to all the terms of this policy, the Company agrees to pay on behalf of the insured LOSS resulting from any occurrence insured by the terms and provisions of the first UNDERLYING INSURANCE policy scheduled in Item 6 of the Declarations (except for the Limits of Liability and defense provisions, if any). The insurance afforded by this policy shall apply only *in excess of and after all UNDERLYING INSURANCE* (as scheduled in Item 6 of the Declarations) [the Mission policy] *has been exhausted.*

2. Limit of Liability (as set forth in Item 5 of the policy Declarations):

The Company's Liability under this policy, shall not exceed the greater of the following amounts:

A. One hundred percent (100%) of the LOSS in excess of all UNDERLYING INSURANCE nor for more than

B. $10 million per occurrence; or

C. $10 million annual aggregate (as defined in the First UNDERLYING policy). R. Item 1, Ex. D (Emphasis supplied).

Under the emphasized language of the policy, it is clear that liability attaches for excess coverage only after the amount of primary and secondary coverage "has been exhausted." "Exhaustion" does not occur until the underlying insurance limits have been met through payment. *Zurich Insurance Co. v. Heil Co.*, 815 F.2d 1122, 1126 (7th Cir.1987). Because the term used in the insurance contract unambiguously favors the excess insurer, the insolvency of the underlying insurer, here Mission, cannot trigger the excess insurer's obligation to pay. *Hudson Insurance Co. v. Gelman Sciences, Inc.*, 921 F.2d 92 (7th Cir.1990). Moreover, Federal's limit of liability provision states that its liability shall not exceed "100% of the loss in excess of all underlying insurance * * *." Here the underlying insurance was $20,500,000, so that Federal had no obligation unless plaintiff's loss in the Prigge lawsuit should exceed $20,500,-000. See *Zurich*, 815 F.2d at 1125–1126; *U.S. Fire Insurance Co. v. Charter Financial Group, Inc.*, 851 F.2d 957, 961 (7th Cir.1988). Since that lawsuit was settled for $850,000 (Defendant's Br. 5 n. 1), Federal need not pay any of it.

In the absence of clear language imposing on Federal the risk of Mission's insolvency, we decline to create any "drop down" obligation for Federal. A contrary rule would force an excess coverage provider to investigate the financial stability of every underlying carrier. Such considerations prompted us to construe similar language as not imposing an obligation on a second-level insurer to provide "drop down" coverage when the primary carrier becomes insolvent. *Zurich*, 815 F.2d at 1126. Although that case involved Wisconsin law, the same result obtains in Illinois. *Hudson*, 921 F.2d at 95. Of course, if the policy language so provided, then an excess policyholder could require an insurer to "drop down" in the situation presented here. Language requiring an excess insurer to provide coverage for liabilities in excess of "amounts recoverable" has been construed to impose a "drop down" obligation, for example. *Donald B. MacNeal*, 132 Ill.App.3d at 567–568, 87 Ill.Dec. at 797, 477 N.E.2d at 1325. But Federal's

**64**

policy language shows that it did not contract to bear the risk of Mission's insolvency, and there is no indication that the insolvency of Mission was one of the risks considered in determining Federal's premium.

Nothing in the Federal policy contains a promise by Federal to provide New Process with primary coverage if an underlying insurer becomes insolvent. Since Federal is not obligated to provide "drop down" coverage to New Process for the $850,000 liability incurred as a result of the Prigge lawsuit, Federal was entitled to summary judgment in its favor.

Judgment affirmed.