**RANGER INSURANCE COMPANY,**
Plaintiff,

v.

**SAFETY–KLEEN CORPORATION,**
Defendant.

No. 92 C 714.

United States District Court,
N.D. Illinois, E.D.

Feb. 12, 1993.

As Redacted Based on Sealing Orders
March 2, 1993 and March 25, 1993.

Robert Marc Chemers, Robert J. Franco, II, Scott O. Reed, Anne S. Johnson, Pretzel & Stouffer, Chtd., Chicago, IL, for Ranger Ins. Co., plaintiff.

Eugene A. Schoon, Gerard David Kelly, Michele Renee Sowers, Sidley & Austin, Chicago, IL, for Safety–Kleen Corp., defendant.

## MEMORANDUM OPINION AND ORDER

GOTTSCHALL, United States Magistrate Judge.

This matter is before the court on the motion to dismiss of defendant Safety–Kleen Corporation ("Safety–Kleen"). For the reasons set forth below, the motion is granted in part and denied in part.

### BACKGROUND

In this action, plaintiff Ranger Insurance Company ("Ranger") seeks a declaration concerning its liability under four comprehensive general liability insurance policies issued on a primary basis to Safety–Kleen and covering the time period April 1980 to October 1983. Two lawsuits have been filed against Safety–Kleen based on injuries within that period, with Ranger settling or contributing to the settlement of each suit under a reservation of rights. The declaration requested here would establish Ranger's right to reimbursement of some or all of the amounts paid toward those settlements.

The first claim in question, which is the only one relevant to this motion, relates to a 1988 lawsuit filed against Safety–Kleen by James Junker ("Junker") and his wife, Karen Junker. In that action, Junker claimed that he contracted acute lymphatic leukemia as a result of continuous exposure to hazardous chemicals in products manufactured by Safety–Kleen. In particular, Junker complained of exposure to benzene in a solvent used to clean grease from automotive parts. The exposure occurred during Junker's employment as an automotive mechanic from 1978 or 1980 until May 1987. Ranger contributed an unspecified amount to the [*] settlement in the Junker litigation, but now asserts a number of defenses to coverage in Count I of its complaint.

Counts II and III are pled in the alternative, should it be determined that Ranger had an obligation to indemnify Safety–Kleen in the Junker litigation. As discussed below, Safety–Kleen moves to dismiss each of these counts.

### COUNT II

In Count II, Ranger contends that if there is coverage for the Junker litigation, each of its four policies of insurance was triggered by an occurrence within each policy period. Each of Ranger's policies provides for a deductible of $50,000 per occurrence subject to a $500,000 aggregate. Under each policy, if Ranger pays any part or all of a deductible amount to effect settlement of any claim or suit, the named insured is to reimburse it for the deductible amount paid. Cmplt., ¶ 16. Adding up the deductibles under the policies, if there was one occurrence within each policy period, Safety–Kleen would have an obligation to reimburse Ranger $200,000. The reimbursement obligation would even be greater if there was more than one "occurrence" within a given policy period.

It is fundamental that an insurer does not become obligated to its insured until a triggering event takes place within the policy's period of coverage. *See Zurich Ins. Co. v. Raymark Indus., Inc.*, 118 Ill.2d 23, 112 Ill.Dec. 684, 514 N.E.2d 150 (1987). The

* Deleted material is filed under seal per order of March 25, 1993.

triggering event, or "occurrence," is defined in each of Ranger's policies as an "accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Cmplt., ¶ 19. Each of Ranger's policies further provides that:

> For the purpose of determining the limit of the company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

The policies also provide for a $50,000 deductible per occurrence, which is applied as follows:

> [T]he deductible amount applies under the Bodily Injury Liability or Property Damage Liability Coverage, respectively, to all damages because of all bodily injury or property damage as the result of any one occurrence.

As discussed below, while it is undisputed that Junker was continuously or repeatedly exposed to Safety–Kleen's products, the parties differ in their views as to whether this exposure constitutes a single occurrence, subject to only one deductible.

Safety–Kleen would categorize the exposure on a regular basis to hazardous chemicals resulting in Junker's sickness as a single "occurrence" under the policies' definition of that term. Although that exposure continued over a number of policy periods, Safety–Kleen posits that such exposure constitutes only one occurrence triggering Ranger's duties under its policies.

In support of its argument, Safety–Kleen relies on the Illinois Supreme Court's decision in *Zurich Ins. Co. v. Raymark Indus., Inc.*, 118 Ill.2d 23, 112 Ill.Dec. 684, 514 N.E.2d 150 (1987), where the court considered claims against a manufacturer of asbestos-containing products. Addressing the question of "bodily injury" caused by an "occurrence," *Zurich* affirmed lower court opinions finding that the injury triggering coverage took place at or shortly after the time a claimant was exposed to asbestos. *Id.*, 112 Ill.Dec. at 695, 514 N.E.2d at 161. Said injury would continue throughout the time the claimant was exposed to asbestos. *Id.* Turning to the issue of allocation of liability among insurers that had provided coverage to the manufacturer over a course of several decades, *Zurich* declined to allocate liability on a *pro rata* basis among the triggered policies. *Id.*, 112 Ill.Dec. at 699, 514 N.E.2d at 165. Instead, the decision affirmed the appellate court's conclusion that the insurer under any triggered policy was independently responsible to the insured manufacturer for the full cost of defense and indemnity. *Id.*; *see also Zurich Ins. Co. v. Northbrook Excess and Surplus Ins. Co.*, 145 Ill.App.3d 175, 98 Ill.Dec. 512, 528, 494 N.E.2d 634, 650 (1st Dist.1986), *aff'd*, 118 Ill.2d 23, 112 Ill. Dec. 684, 514 N.E.2d 150 (1987).

In a case involving environmental contamination over a course of at least thirty years, one Illinois court has explained the implications of the holding in *Zurich* as follows:

> The *Zurich* decisions, Appellate and Supreme, provide the necessary guidance.
>
> There, as here, the phrase "during the policy period" defines the insurable event, not the scope of coverage. That is, property damage ... during the policy period triggers coverage....
>
> These are, after all, indemnity policies. They are to cover the insured's liability to others.... The promise in the policy, with some limitations, is to cover that liability. If an insurance company wanted to limit its coverage to damage done in its policy period it could have said so. Any ambiguity on that point must be construed in favor of the insured.
>
> Since these are indemnity, not property damage, policies, attempting to carve out the part of Taylorville damaged in a certain year would be pointless, as well as impossible.
>
> Again, the analogy to *Zurich*. If asbestos settles in a worker's lungs during a policy period, that insurer covers all sums for the whole bodily injury to that worker, even if the injury gets worse after the policy period. Each triggered policy is independently responsible for the full cost of indemnifying that worker. So it is with the pollution damage at Taylorville.

This Ruling is not intended to decide issues concerning "other insurance" clauses and anti-stacking provisions.

... each policy in effect from 1955 through 1985 must provide coverage. Further, I find that coverage, subject to policy limits and special provisions, must fully indemnify [the insured] for the dollar amounts it has paid to satisfy governmental demands to clean up the environment. *Central Illinois Public Serv. Co. v. Allianz Underwriters Ins. Co.*, 90 L 11094 (Cir.Ct. Cook Cty.Ill. Dec. 30, 1991). Applying a similar reasoning here, Ranger would be liable, within the limitations of its policy, to fully indemnify Safety–Kleen if Junker was injured during any one of its four policy periods. If Ranger's contribution to the settlement in the Junker case were less than the policy's limit per occurrence, a single deductible would also apply.[1]

Ranger responds by arguing that, at a minimum, four deductibles would reduce its liability to Safety–Kleen. In making that argument it relies on a rule enunciated in several cases involving claims by multiple parties against an insured. Although multiple parties asserted claims against the insured parties in those cases, the claimants' injuries arguably arose from a single cause. For example, in one case, the Seventh Circuit considered claims of farmers whose livestock had taken ill after eating contaminated feed. *Michigan Chemical Corp. v. American Home Assur. Co.*, 728 F.2d 374 (6th Cir. 1984). The liability before the court was that of insurers of a manufacturer of a livestock feed supplement. The injury to the animals could ultimately be traced to a single occurrence, when that manufacturer mistakenly shipped flame retardant, rather than livestock feed supplement, to an intermediary distributor that mixed the flame retardant with regular livestock feed and sold the resulting product to dairy farmers. In seeking to minimize liability under their policies, the manufacturer's insurers argued that there was a single occurrence under their policies, a single mis-shipment of the fire retardant. *Id.* at 376. Taking the contrary position that there had been multiple occurrences trigger-

ing coverage, the insured manufacturer and its reinsurer argued that each claim against the manufacturer constituted an "occurrence." *Id.* Although there was no discussion of the effect of deductibles, it appears that the manufacturer's interpretation of "occurrence" would have maximized its recovery under the policies in that policy limitations on liability per occurrence would have been avoided.

The Seventh Circuit declined to accept the manufacturer's interpretation of the term, concluding that although injury must be suffered before a claim can be made, the number of occurrences for purposes of applying coverage limitations should be determined by reference to the cause or causes of damage and not to the number of injuries or claims. *Id.* at 379–380. Looking to the cause of injury, however, the court declined to adopt the insurers' contention that there was a single occurrence, occurring at the time the fire retardant was mistaken for the feed supplement. Instead, *Michigan Chemical* noted that as long as the manufacturer retained possession of the fire retardant, no liability could result. *Id.* at 383. The shipment of the substance constituted the act giving rise to liability. *Id.* Other shipments would have created additional exposure to liability and were therefore separate occurrences. *Id.* There being a possibility of multiple occurrences, the district court was instructed to determine how many shipments had occurred. *Id.*

Another of Ranger's cases makes a similar kind of inquiry into the cause of injury so as to determine the number of occurrences covered by a policy. *Mason v. Home Ins. Co. of Illinois*, 177 Ill.App.3d 454, 126 Ill.Dec. 841, 532 N.E.2d 526 (3d Dist.1988). In *Mason*, the claims of injury were based on a restaurant's sale of botulism-tainted food over a three-day period. Although epidemiologic evidence implicated sauteed onions used on patty melt sandwiches as the source of the botulism outbreak, the *Mason* court disagreed with the insurers' contention that there was a single occurrence, corresponding to a single cause, the improper preparation of onions. *Id.*, 126 Ill.Dec. at 844, 532 N.E.2d

1. [Footnote one is under seal per order of March 2, 1993.]

at 529. Citing *Michigan Chemical, Mason* determined that the insured restaurant owner could not be liable for its patrons' injuries until it served each patron a portion of contaminated food. *Id.,* 126 Ill.Dec. at 845, 532 N.E.2d at 530. Accordingly, the service of separate portions of tainted food to individual patrons resulted in multiple occurrences under the policy's definition. *Id.* As a consequence of this interpretation of the term "occurrence," more claims were covered. Looking to the principle applied in *Michigan Chemical* and *Mason,* Ranger contends that there was a separate occurrence each time that Safety–Kleen shipped solvent to Junker's employer. Since each policy provides for a deductible per occurrence, the potential accumulation of deductibles under this theory would increase the amount Safety–Kleen would have to reimburse Ranger.

Because the court considers Safety–Kleen's argument on a motion to dismiss, it accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff. *Dawson v. General Motors Corp.,* 977 F.2d 369, 372 (7th Cir. 1992). The motion must be denied if " 'relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Id.* (quoting *Hishon v. King and Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). In considering the motion, the court looks only to the complaint and exhibits thereto in assessing the sufficiency of a plaintiff's claim. *See Doe v. First Nat'l Bank of Chicago,* 865 F.2d 864, 873 (7th Cir.1989). At the same time, the court is not obliged to ignore facts set forth in the complaint or exhibits that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law. *Hamilton v. O'Leary,* 976 F.2d 341, 343 (7th Cir.1992); *Scott v. O'Grady,* 975 F.2d 366, 368 (7th Cir.1992).

Factually, the injury complained of here is a good deal more similar to that in *Zurich* than in *Michigan Chemical* and *Mason,* where multiple injuries ultimately could be traced to a single, nonrecurring event. Also, both *Zurich* and Ranger's policy language make it clear that injury from continuous or repeated exposure to conditions is to be treated as a single occurrence. Because the analogy to *Zurich* is more apt, this court rejects Ranger's theory of multiple occurrences corresponding to shipments or delivery of Safety–Kleen's product.

Notwithstanding this conclusion, it is still possible that Ranger can establish more than one occurrence entitling it to recover a deductible. In its arguments on this motion, Safety–Kleen has not directly confronted the question of policy limits. However, it has suggested that even if more than one policy were called on to supply indemnification, only one deductible would apply. This court cannot agree, as such result would penalize an insurer that provides insurance coverage in more than one time period. If Insurer A is required to provide coverage for an exposure-based injury under its policy for Year 1, and Insurer B is required to indemnify for the same injury under its policy for Year 2, both insurers would be entitled to the deductibles under their policies. A different result should not obtain simply because the same insurer, Ranger, provided coverage in both Years 1 and 2. Indeed, there is nothing in *Zurich* that would preclude the payment of deductibles under all triggered policies. Because Ranger's allegations in Count II are consistent with a claim for one deductible per triggered policy, Safety–Kleen's motion to dismiss this count is denied.

## COUNT III

As noted previously, the Junker litigation terminated in a settlement. Cmplt., ¶ 11. After settlement had been reached, but apparently before payment of some or all of the settlement amount, one of Safety–Kleen's other insurers became insolvent. Cmplt., ¶ 12. Ranger alleges that in order that the settlement proceed, it "paid a portion of that insolvent carrier's share under a reservation of rights." Cmplt., ¶ 12. No details concerning the negotiations between insurers on that contribution issue are alleged in the complaint, although the parties indicate on this motion that carriers providing insurance in years other than 1980–1983 contributed to the settlement. In Count III of the complaint, Ranger seeks to recover the amount expended due to the insolvency of

one carrier, which amount was "in addition to what it had committed to the settlement of the Junker action." Cmplt., ¶ 31. This carrier had provided coverage for the period February 15, 1979 to April 1, 1980. Amended Memorandum in Opposition to Motion to Dismiss at 8 n. 4. As Ranger sees it, it had no obligation to fill the gap created by the other carrier's insolvency. Cmplt., ¶ 32.

Safety–Kleen moves to dismiss Count III, again relying on the holding in *Zurich* that, in the case of injury from continuing or repeated exposure to asbestos, any insurer on any triggered policy is, subject to policy limits, responsible to its insured for the full cost of defense and indemnity. Looking to the allocation of costs among carriers, *Zurich* sees that question as one of contribution, involving only the insurers. *See Zurich Ins. Co. v. Northbrook Excess and Surplus Ins. Co.*, 145 Ill.App.3d 175, 98 Ill.Dec. 512, 528, 494 N.E.2d 634, 650 (1st Dist.1986), *aff'd*, 118 Ill.2d 23, 112 Ill.Dec. 684, 514 N.E.2d 150 (1987).

While not taking issue with these determinations in the *Zurich* case, Ranger compares the situation here to cases where, following its primary insurer's insolvency, an insured seeks payment under an excess insurance policy. Funds from the excess policy would fill the gap in coverage created by the primary carrier's insolvency. The rule in the majority of cases addressing the issue is that, absent language in the excess carrier's policy to that effect, it is not required to provide primary coverage when an underlying insurer becomes insolvent. *Hudson Ins. Co. v. Gelman Sciences, Inc.*, 921 F.2d 92, 95 (7th Cir.1990); *Zurich Ins. Co. v. Heil Co.*, 815 F.2d 1122 (7th Cir.1987). *Cf. Donald B. MacNeal, Inc. v. Interstate Fire and Casualty Co.*, 132 Ill.App.3d 564, 87 Ill.Dec. 794, 797, 477 N.E.2d 1322, 1325 (1st Dist.1985) (excess insurer required to fill gap in coverage; court finding ambiguity in policy language providing that excess carrier assumed liability for excess over "amounts recovera-

ble" under primary policy). As the Seventh Circuit has commented, "[a] contrary rule would force an excess coverage provider to investigate the financial stability of every underlying carrier." *New Process Baking Co. v. Federal Ins. Co.*, 923 F.2d 62, 63 (7th Cir.1991). Insolvency may not have been one of the risks the excess carrier considered in determining its premium. *See id.* at 64.

The insolvent carrier in this case provided coverage in a different time period than did Ranger.[2] This court agrees with Ranger that there is no precedent for a kind of "move-over," whereby an insurer during one policy period is required to fill a gap left when a carrier providing coverage in a different time period becomes insolvent. Such result would make the insurer liable for more than it bargained for when it entered into the insurance contract. Nor does this court believe that *Zurich* compels such conclusion. Rather, *Zurich* finds that if there is a triggering event within the policy period, the carrier is liable up to the limits of its coverage for that period. Once that coverage is exhausted, though, the obligation to indemnify or defend ceases. *See Zurich*, 112 Ill.Dec. at 697, 514 N.E.2d at 163. *Zurich* does not upset or undermine the basic rule that the duties of an insurer with respect to an occurrence within a policy period are determined by reference to the policy in effect during that period.

Ranger would compare its situation to that of an excess carrier whose policy must "drop down" to provide coverage, but the analogy is defective. Significantly, the "drop down" cases deal with the question of whether amounts potentially payable under an excess policy can be applied to the liability of a primary insurer whose policy covers the same time period as the excess policy. The problem here is simply not the same problem as in the "drop down" cases.

In this court's view, to determine whether Ranger has paid more than it was obligated

---

**2.** The identity of the other carrier and the time its policy was in force are not alleged in the complaint. While the court considers allegations outside the complaint concerning the other carrier, it bears in mind that there does not appear to be any factual dispute concerning the coverage provided by the insolvent carrier. On this motion to dismiss, Safety–Kleen's arguments have forced Ranger to explain the premise underlying Count III. The count is dismissed because that premise is defective as a matter of law, not because a factual determination has been made.

**750**

to in the Junker litigation, the court need look no further than the terms of the policies that were triggered. As discussed in the preceding section of this memorandum, Ranger may be entitled to reimbursement of deductibles under one or more of its policies. Depending on the number of deductibles per occurrence and policy limits, there is a potential for reimbursement of deductibles. Ranger may also be entitled to reimbursement for any amounts paid in excess of the policy limits. But Ranger is not entitled to avoid payment of its policy limits because of the insolvency of another primary carrier. Accordingly, Count III is dismissed.

### CONCLUSION

For the reasons set forth above, Safety–Kleen's motion to dismiss is granted in part and denied in part. Count III of the complaint is dismissed.