163 Wis.2d 687 (1991)
472 N.W.2d 819
IN the INTEREST OF M.D.(S), a child under the age of 18: A.S., Appellant,
v.
STATE of Wisconsin, Respondent.
IN the INTEREST OF R.A., Jr., a child under the age of 18: A.S., Appellant,
v.
STATE of Wisconsin, Respondent.
IN the INTEREST OF E.A., a child under the age of 18: A.S., Appellant,
v.
STATE of Wisconsin, Respondent,
IN the INTEREST OF R.A., Jr., a person under the age of 18: R.A., Sr., Appellant,[]
v.
STATE of Wisconsin, Respondent.
IN the INTEREST OF E.A., a person under the age of 18: R.A., Sr., Appellant,[]
v.
STATE of Wisconsin, Respondent.
Nos. 90-0659, 90-1369.
Court of Appeals of Wisconsin.
Submitted on briefs March 11, 1991,
Decided June 6, 1991.
*691 For the appellant A.S. the cause was submitted on the briefs of Richard J. Auerbach of Auerbach & Porter of Madison; for the appellant, R.A., Sr., the cause was submitted on the briefs of Shelley J. Gaylord of Gaylord & Schuett of Madison.
For the respondent the cause was submitted on the brief of Rodney Knight, assistant corporation counsel for Dane County, and Donald W. Becker, guardian ad litem, of Madison.
Before Eich, C.J., Gartzke, P.J., and Sundby, J.
EICH, C.J.
A.S. and R.A. appeal from an order terminating their parental rights to their children. The issues are: (1) whether the due process provisions of the United States Constitution provide a right to effective assistance of counsel in termination of parental rights (TPR) cases;[1] (2) whether the parents' substantive due process rights were violated when they did not receive warnings under the newly amended sec. 48.415(2), Stats., in the CHIPS[2] proceedings leading up to termination;[3] and (3) whether they were prejudiced by special *692 verdict questions inquiring into their failure to communicate with their children.[4]
We conclude that while there may be a federal due process right to counseland thus to the effective assistance of counselin TPR cases, depending on the facts and circumstances of the individual case, the parents in this action had no such right. We also conclude that the fact that the TPR "warnings" to the parents at the conclusion of the various CHIPS proceedings were based on correction of the conditions that led to the children's removal from the parental home, rather than the requirements for their return, as provided in the amended statute, did not deprive the parents of substantive *693 due process. Finally, we hold that the trial court did not err in submitting a verdict question on the parents' failure to communicate with the children.
The facts are not in dispute. A.S. and R.A. are married. A.S. is the mother of three of the children, and R.A. the father of two of them. The children were removed from the parents' custody by juvenile court orders in CHIPS proceedings at various times since 1981. During the years the children were in foster care, the juvenile court entered numerous orders setting forth the conditions that led to removal, establishing various rules of supervision, and setting forth conditions for the return of each child to the parental home. At the entry of the initial orders, and at each extension or modification thereof, the parents were warned, as required by secs. 48.415(2) and 48.356, Stats.,[5] That failure to remedy those conditions could lead to involuntary termination of their parental rights.
In November, 1988, proceedings were brought to terminate the parental rights of both parents. At that time, the children were between three and seven years of age and each had spent by far the greater part of his or her life in foster care pursuant to the earlier CHIPS orders. After a fact-finding hearing in which a jury found that the parents had "substantially neglected, willfully refused or been unable to meet the conditions established" for the children's return, and that there was a substantial likelihood that they would not be able to meet those conditions in the future, the court terminated their parental rights.[6] Both filed motions for postconviction *694 relief, which were denied, and this appeal followed.

EFFECTIVE ASSISTANCE OF COUNSEL
The parents first argue that they have a right to effective assistance of counsel under the due process clause of the United States Constitution.
[1-4]
Wisconsin statutes provide that a parent is entitled to appear with counsel in involuntary TPR actions and that indigent parents are entitled to court-appointed counsel. Sec. 48.23(2), Stats. Parents must affirmatively waive counsel before proceedings may be conducted. Id. No right to effective assistance of counsel can be inferred from the statutory right to counsel, however. See In re P.L.S., 158 Wis.2d 712, 463 N.W.2d 403 (Ct. App. 1990) (there is no constitutional right to effective assistance of counsel in paternity cases).
[5]
Where the source of the right to counsel is the United States Constitution, a different rule obtains. It is well established under federal constitutional law that the right to counsel means the right to effective assistance of counsel. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). Since the parents' claim in this case is based on the due process provisions of the fifth and fourteenth amendments to the U.S. Constitution, if they are entitled to counsel under those provisions, then they also are entitled to the effective assistance of counsel. Id.
In Lassiter v. Dep't of Social Services, 452 U.S. 18 (1981), the United States Supreme Court considered whether there was a constitutional due process right to *695 counsel in involuntary termination of parental rights cases. The Court began by analyzing prior cases, drawing from them "the presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty." Id. at 26. Then, looking to Mathews v. Eldridge, 424 U.S. 319, 335 (1976), for the "elements to be evaluated in deciding what due process requires," the Lassiter court stated that these elements"the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions"must be balanced against each other and "their net weight [set] in the scales against the presumption that there is a right to appointed counsel only where the indigent[`s] . . . personal freedom [is at stake]." Id., 452 U.S. at 27. The Court then discussed the application of such an analysis to TPR cases:
[T]he parent's interest is an extremely important one . . .; the State shares with the parent an interest in a correct decision, has a relatively weak pecuniary interest, and, in some but not all cases, has a possibly stronger interest in informal procedures; and the complexity of the proceeding and the incapacity of the uncounseled parent could be, but would not always be, great enough to make the risk of an erroneous deprivation of the parent's rights insupportably high.
If, in a given case, the parent's interests were at their strongest, the State's interests were at their weakest, and the risks of error were at their peak, it could not be said that the Eldridge factors did not overcome the presumption against the right to appointed counsel, and that due process did not therefore require the appointment of counsel. But since the Eldridge factors will not always be so distributed ... neither can we say that the Constitution *696 requires the appointment of counsel in every parental termination proceeding. We therefore .. . leave the decision whether due process calls for the appointment of counsel for indigent parents in termination proceedings to be answered in the first instance by the trial court, subject, of course, to appellate review. Id. at 31-32.
Thus, whether counsel is necessary to "meet the applicable due process requirements" is a shifting analysis in that it depends on the "facts and circumstances" of the particular case, analyzed in light of the factors enumerated in Lassiter and Eldridge. It is, according to the Lassiter court, a determination properly made in the first instance by the trial court. Id., 452 U.S. at 32. Having said that, however, the Lassiter court did not remand the case to the trial court for determination of the due process claim but went on to decide the issue itself. Recognizing that it would be "neither possible nor prudent to attempt to formulate a precise and detailed set of guidelines to be followed in determining when [appointment] of counsel is necessary to meet . . . due process requirements," the Court stated: "Nevertheless, because child-custody litigation must be concluded as rapidly as is consistent with fairness, we decide today whether the trial judge denied Ms. Lassiter due process of law when he did not appoint counsel for her." Id., 452 U.S. at 32.
In making that determinationin applying its Eldridge-based analysis to the facts of the casethe Lassiter court isolated four facts that persuaded it to rule that due process did not require appointment of counsel in the case at hand: (1) the TPR petition did not allege any criminal conduct on the parent's part, which would make her need for representation more acute; (2) the case presented "no specially troublesome points of law, *697 either procedural or substantive"; (3) "the weight of the evidence that [the parent] had few sparks of . . . interest [in the child] was sufficiently great that the presence of counsel . . . could not have made a determinative difference" in the case; and (4) the parent had failed to attend at least one earlier hearing in the matter and had not spoken with her lawyer prior to the termination hearing. Lassiter, 452 U.S. at 33.
We reach a similar conclusion here. On the facts of this case, we conclude that the parents were not entitled to counsel under the due process clause of the federal constitution.
[6, 7]
First, the petition to terminate their rights contained no allegations of neglect or abuse upon which criminal charges could be based. Thus, they could not argue that they required counsel for that reason. Second, the case presented no "specially troublesome" points of law; rather, it involved the application of well-established, relatively simple legal standards to the facts presented. The weight of the evidence that the parents had little interest in the children was sufficiently great that we believe the presence of counsel could not have made a determinative difference. Each child had been in foster care for most of its life and had had very little contact with either parent. Both parents had been warned repeatedly that their failure to remedy the conditions which had caused the children to be removed in the first place could lead to a termination of their parental rights. As indicated, the jury found that, despite the repeated warnings, the equivalent requirements for the children's return had not been satisfied. Finally, the parents had neither communicated with nor inquired about their children for a considerable period of time prior to the filing of the termination petition. We hold, therefore, *698 that A.S. and R.A. had no right to counsel in this case under the due process clause of the U.S. Constitution. It follows that they had no constitutional right to effective assistance of counsel. McMann, 397 U.S. at 773.

STATUTORY WARNINGS
The parents next argue that their right to substantive due process was violated because, in the several CHIPS hearings and orders upon which the petition for termination was based, they were never warned of the precise grounds for termination considered in the latter proceedings.
As we have noted earlier, at the time each child was removed from the parents' care, sec. 48.415(2)(c), Stats. (1985-86), provided that grounds for termination of parental rights would exist upon a showing that, in the succeeding year, the parent had been unable to remedy the conditions that led to the child's removal. Thus, at the entry of the initial order for each child, and at each extension or modification thereof, the parents were warned, as required by secs. 48.415(2) and 48.356, Stats., that failure to remedy the removal conditions could lead to involuntary termination of their parental rights.
The legislature then amended sec. 48.415(2)(c), Stats. (1985-86), changing the CHIPS grounds for termination of parental rights from failure to remedy the conditions necessitating removal to failure to meet the requirements specified for the child's return. The amendment became effective on May 3, 1988. Sec. 12, 1987 Wis. Act 383.
In August, 1988, the Dane County filed a petition for termination of R.A.'s and A.S.'s parental rights. As grounds therefor, it was alleged that each of the children had been adjudged in need of protection or services and *699 that the parents had been unable "to meet . . . the conditions established for [their] return . . . to the parental home."
[8]
The parents argue that their substantive due process rights were violated because they never were warned that their parental rights could be terminated if they failed to meet the return requirements, as opposed to the removal conditions. Upon examination, however, the two sets of conditions/requirements in the several CHIPS orders are so closely related as to be equivalent. We thus reject the argument.
The first condition cited as cause for removal of the children from the home states that both parents have significant case histories of repeated criminal law violations; the first condition specified for the children's return to the home is that both parents must refrain from any activity that violates federal, state, local or division of correction laws. The second condition said to warrant removal is that A.S. had demonstrated angry, assaultive behavior towards persons providing counseling services and other forms of assistance to her; and the second condition for the children's return is that she must refrain from angry, assaultive, threatening behavior towards service providers and others. The third removal condition relates to R.A.'s physical abuse of A.S; and the third return requirement is that R.A. refrain from such conduct and that the parents maintain a home free from violence.
Other reasons for removal stated in the various CHIPS orders were: (1) that the parents failed to provide suitable housing; (2) that they failed to use financial resources so as to be able to maintain a home, pay bills and buy food; (3) that they failed to inquire regularly about their children and had not developed or maintained *700 substantial parental relationships with them; and (4) that they failed to exercise good parental judgment and provide proper care and supervision of their children and failed to cooperate with service providers.
The concomitant conditions for the children's return stated in the orders were that the parents: (1) maintain suitable housing; (2) maintain a reliable source of income (which can be public assistance); (3) inquire regularly about their children; and (4) demonstrate an ability to provide care and supervision for their children and to cooperate with and benefit from counseling and other parenting improvement programs ordered by the court.
So compared, the ordered requirements for return of the children do little more than recapitulate the conditions stated in the orders as justifying the children's removal from the home in the first instance. The requirement for their return is, in essence, correction of the conditions that led to their removal. We thus do not see how the parents could have been prejudiced by the form of the notices and warnings they were given in the several CHIPS proceedings and conclude that they have not shown any deprivation of their due process rights.

THE "ABANDONMENT" INSTRUCTION
The parents next argue that it was prejudicial error for the trial court to include "abandonment" questions in the special verdictquestions asking whether they had failed to communicate with their children for six months or longer.
[9, 10]
Although trial courts generally have broad discretion when instructing a jury, the instructions must be in accord with the facts and accurately reflect the law. *701 White v. Leeder, 149 Wis. 2d 948, 954-55, 440 N.W.2d 557, 559-60 (1989). If an instruction does not do so, and if the jury was probably misled thereby, the error is considered prejudicial. Roshe v. Wayne Feed Division, Continental Grain Co., 152 Wis. 2d 78, 84, 447 N.W.2d 94, 96 (1989).
As indicated, the jury found, among other things, that the parents had failed to meet the conditions for return of their children and were likely to continue in this failure in the future. They were also asked whetherwith respect to each parent and each child individuallythe parent had "failed to communicate" (except for "incidental contact") with each child for six months or longer. The question is in the language of sec. 48.415(1)(a)2, Stats., which states that abandonmentan alternative ground for terminationmay be established by a showing that the child has been placed outside the home "and the parent has failed to visit or communicate with the child for a period of 6 months or longer." The jury answered the question in the affirmative with respect to each parent and child.
In its postverdict findings, however, the trial court concluded that, although the evidence supported the jury's findings that the parents had failed to communicate with their children for six months or more, as a matter of law their failure to do so could not be grounds for termination because they were prohibited by court order from visiting with the children. The court based its ruling on sec. 48.415(1)(b), Stats., which provides that "[t]he time periods [during which the parent has failed to visit or communicate] shall not include any periods during which the parent has been prohibited by judicial order from visiting or communicating with the child." The trial court then set aside the jury's answers to the *702 two verdict questions pertaining to the parents' failure to communicate.
The parents argue that submitting a "clearly inappropriate ground for termination" to the juryeven though the answers were later nullified by the court" sufficiently tainted the jury's deliberations . . . as to justify a new trial." We disagree.
[11]
First, while it is true that visitation between the parents and children was prohibited by court order, there was no bar against communicating with them; and the verdict questions asked only whether the parents had communicated with the children in the past six months, not whether they had visited with them. We thus disagree with the trial court's ruling that the visitation prohibition rendered the verdict question improper as a matter of law.
Second, even if it was error, we see no prejudice. While R.A. assertswithout citation to the record[7]that much of the trial "was unnecessarily and prejudicially focus[ ]ed" on the issues of "visitation or communication," we agree with the respondents (Dane County and the children's guardian ad litem) that neither parent has shown what that prejudice was.
[12]
At the heart of the verdict were the questions inquiring whether the county established, by clear, satisfactory and convincing evidence, that the parents had been, and likely will continue to be, unable to meet the conditions established by the court over the years for their children's return. Neither parent has satisfied us *703 that a question inquiring whether they had failed to communicate with the children in the preceding six months somehow prejudiced the jury's response to the crucial inquiry into whether the children continued to be in need of protection and services and whether that need was likely to continue into the future.
By the Court.Orders affirmed.
SUNDBY, J. (dissenting).
In this involuntary termination of parental rights case, the mother of three children, whose parental rights have been terminated by the state, asks the poignant question: "What price a child?" Our decision relegates her and the father to damages in legal malpractice actions if their parental rights have been lost due to ineffective assistance of counsel. I reject the proposition that a legal malpractice remedy is effective to redress the loss of parental rights. I conclude that the parent is entitled to a new hearing at which he or she is represented by effective counsel.
In In re P.L.S., 158 Wis. 2d 712, 463 N.W.2d 403 (Ct. App. 1990) (Sundby, J., dissenting), I concluded that when the legislature gives an indigent person the right to state-appointed counsel, that right includes the right to effective assistance of counsel. Indigent parents in involuntary termination of parental rights proceedings are entitled to counsel. See secs. 48.23(2)(a) and 977.05(4)(h), Stats. In P.L.S., I adopted the following statement from In re Smith, 573 A.2d 1077, 1079 (Pa. Super. Ct. 1990):
To assume that what is meant by assistance of counsel does not include the concept of able, effective representation is to ascribe to the statute a ludicrous result, that is, that such counsel need not be able to perform appropriately, or indeed at all, to fulfill the legislative mandate. *704 P.L.S., 158 Wis. 2d at 724, 463 N.W.2d at 409. I believe the parents herein were entitled to the effective assistance of counsel.
From my experience as a practitioner and as a judge, I wholeheartedly agree with the mother's assessment of the demands upon counsel in an involuntary termination proceeding, as follows:
Trial counsel must be prepared to attack the jurisdiction of the court, the validity of petitions, the nature of the [CHIPS] warnings, the diligence of the efforts by the assigned agency, deal with expert witnesses, review the agency and court files that may run into the thousands of pages, conduct depositions, answer and promulgate interrogatories, and at the end participate in a difficult and protracted trial in which the public representative and the guardian ad litem are ordinarily in lock-step against the parent.
The U.S. Supreme Court has recognized the vast disparity in an involuntary termination case between the ability of the state to prosecute and the ability of the parent to defend. In Santosky v. Kramer, 455 U.S. 745, 763 (1982), the Court stated as follows:
The State's ability to assemble its case almost inevitably dwarfs the parents' ability to mount a defense. No predetermined limits restrict the sums an agency may spend in prosecuting a given termination proceeding. The State's attorney usually will be expert on the issues contested and the procedures employed at the factfinding hearing, and enjoys full access to all public records concerning the family. The State may call on experts in family relations, psychology, and medicine to bolster its case. Furthermore, the primary witnesses at the hearing will be the agency's own professional caseworkers whom the State has empowered both to investigate the family *705 situation and to testify against the parents. Indeed, because the child is already in agency custody, the State even has the power to shape the historical events that form the basis for termination.
In a footnote to the above statement, the Court noted that the parents claimed that the state sought court orders denying them the right to visit their children, which would have prevented them from maintaining the contact required by the family court act. The parents' claim in Santosky has been realized in this case: The parents were prohibited from exercising visitation with their children and that failure is now used by the state as justification for terminating the parents' parental rights.
To force parents whose rights to their children are threatened by the state to face the enormous resources of the state without the effective assistance of counsel is contrary to the most basic precepts of fair play. As far back as In re Gault, 387 U.S. 1, 36 (1967), the U.S. Supreme Court recognized that "the guiding hand of counsel" is essential to otherwise defenseless persons whose liberty or property interests may be adversely affected by state action. The contention that fair play is nonetheless accorded when the guiding hand of counsel is infirm does not require rebuttal.
The Wisconsin legislature has decided that an indigent parent facing the vast resources of the state in involuntary termination proceedings is entitled to stateappointed counsel. Section 48.23(2)(a), Stats. "It is axiomatic that the right to counsel includes the right to competent counsel." In re Trowbridge, 401 N.W.2d 65, 66 (Mich. Ct. App. 1986). Therefore, we need not look to the state or federal constitutions for the right to effective counsel; the legislature has given indigent parents that right.
*706 The majority relies on Lassiter v. Department of Social Services, 452 U.S. 18 (1981). Lassiter, however, supports my position. In that case, the Court, in a five-to-four decision, concluded that the trial judge did not deny an indigent mother due process when he did not appoint counsel for her in an involuntary parental rights termination case. However, the Court stated:
In its Fourteenth Amendment, our Constitution imposes on the States the standards necessary to ensure that judicial proceedings are fundamentally fair. A wise public policy, however, may require that higher standards be adopted than those minimally tolerable under the Constitution. Informed opinion has clearly come to hold that an indigent parent is entitled to the assistance of appointed counsel not only in parental termination proceedings, but also in dependency and neglect proceedings as well. Most significantly, 33 States and the District of Columbia provide statutorily for the appointment of counsel in termination cases. The Court's opinion today in no way implies that the standards increasingly urged by informed public opinion and now widely followed by the States are other than enlightened and wise.
Id. at 33-34 (citations omitted).
Informed public opinion in Wisconsin, acting through the Wisconsin legislature, demands stateappointed counsel for indigent persons subject to emergency detention or involuntary civil commitment under ch. 51, Stats., for children subject to proceedings under ch. 48, Stats., for alleged fathers in paternity actions, and for parents in involuntary termination of parental rights cases. The "enlightened and wise" public policy has now been judicially nullified for indigent fathers in paternity actions, see In re P.L.S., 158 Wis. 2d 712, 463 N.W.2d 403 (Ct. App. 1990), and, today, for indigent *707 parents in involuntary termination of parental rights proceedings. [1]
*708 Caution: Due to the inadvertent omission of a portion of the dissenting opinion published here, the majority and dissenting opinions issued in Schlomer v. Perina have been republished in their entirety at 173 Wis. 2d 889.
NOTES
[] Petition to review granted.
[1] No assertion is made on this appeal that a parent whose parental rights are sought to be terminated has a right to effective assistance of counsel under the Sixth Amendment. The parents' claim is based wholly on the due process clause.
[2] The acronym refers to the jurisdiction of the juvenile court over children in need of protection or services under sec. 48.13, Stats.
[3] Each of the children had been adjudged a child in need of protection or services (CHIPS) in earlier proceedings and placed in foster care. The original petition to terminate A.S.'s and R.A.'s parental rights was based on their failure to remedy the conditions that led to placement outside the home, one of the grounds for termination under sec. 48.415(2), Stats., as that section existed at the time.

The statutes also require that whenever the juvenile court orders a child placed outside the home the parents must be informed "of any grounds for termination of parental rights .. . which may be applicable and of the conditions necessary for the child to be returned to the home." Sec. 48.356, Stats.
At the time of the CHIPS proceedings involving A.S's and R.A.'s children, sec. 48.415(2), Stats., provided that grounds for involuntary termination of parental rights would exist where the parents failed to correct the conditions specified in the order as requiring placement of the children outside the home, and A.S. and R.A. were so advised at the time the chips orders (and extensions) were entered. The statutory provisions were subsequently amended to provide that the parents' failure to meet the conditions set in the order for return of the children to the parental home would constitute grounds for termination. The parents' due process claim is that they were never warned of the proper (amended) grounds for termination.
[4] Appellants also challenge the constitutionality of sec. 48.424(4), Stats., which requires the court to enter a finding of parental unfitness whenever it or a jury finds grounds for terminating parental rights. Both concede that the challenge is pro forma only, for we have already held, in In re K.D.J., 153 Wis. 2d 249, 450 N.W.2d 499 (Ct. App. 1989), aff d 163 Wis. 2d 90, 470 N.W.2d 914 (1991), that the statute is constitutional.
[5] See note 3, supra.
[6] Under sec. 48.415(2)(c), Stats., one of the grounds for termination of parental rights is:

That the child has been outside the home for a cumulative total period of one year or longer pursuant to such orders, the parent has substantially neglected, wilfully refused or been unable to meet the conditions established for the return of the child to the home and there is a substantial likelihood that the parent will not meet these conditions in the future.
[7] "This court need not consider arguments unsupported by citations to authority . . . or references to the record . . .." Lechner v. Scharrer, 145 Wis. 2d 667, 676, 429 N.W.2d 491, 495 (Ct. App. 1988).
[1] I do not express an opinion on the merits of the parents' claims of ineffective assistance of counsel. These claims should be addressed in a Machner hearing. See State v. Machner, 92 Wis. 2d 797, 804, 285 N.W.2d 905, 908-09 (Ct. App. 1979).